# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### APRIL 2000 Session

## LINDA JEAN ZETTERSTEN v. ROLF BIRGER ZETTERSTEN

**Direct Appeal from the Chancery Court for Williamson County**
**No. II25288; The Honorable Donald P. Harris, Chancellor**

_____

**No. M1999-01186-COA-R3-CV - Filed August 31, 2000**

_____

This appeal arises from an action for divorce and division of marital assets. The court below granted Linda Jean Zettersten ("Wife") a divorce on grounds of Rolf Birger Zettersten's ("Husband's") stipulation of inappropriate marital conduct; awarded Wife alimony in futuro and rehabilitative alimony and child support for the parties' minor child; awarded Wife $11,923.50 in attorney's fees, discretionary costs and court costs. Wife appeals.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part, Modified in Part, and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which FARMER, J., and LILLARD, J., joined.

Mary Frances Lyle, Nashville, for Appellant

Maclin P. Davis, Jr., Caroline Thomas Trost, Nashville, for Appellee

### OPINION

The parties were married in June 1976. At the time of the marriage, Wife had recently completed college and Husband was still in college.[1] During the marriage, Husband worked at various jobs in the religious publication industry. Wife did not work except for a brief period shortly after the marriage and another brief period when Husband returned to school for his Masters. Wife remained at home to care for the parties three children.[2] During the course of the marriage, the family relocated several times due to Husband's job. At the time of the divorce, the family was residing in Williamson County, Tennessee.

_____

[1] Husband has a BA in journalism. Wife has a BA in religious education.

[2] At the time of the parties' divorce, only one of the parties' children (Trevor, age 9) was a minor.

Wife filed for divorce on February 25, 1998, alleging irreconcilable differences as grounds for divorce. Husband answered and counter-claimed for divorce, alleging irreconcilable differences and inappropriate marital conduct. Wife dismissed her complaint and filed an answer to Husband's counter-claim. Wife later filed an amended answer and counter-claim alleging irreconcilable differences, inappropriate marital conduct, and adultery as grounds for divorce. At trial the parties reached an agreement by which Wife was granted a divorce on the ground of Husband's stipulated inappropriate marital conduct without evidence of the conduct required.

Both parties proffered evidence at trial regarding Husband's earning capacity, the parties' standard of living, and the relative assets and expenses of the parties. Based on this evidence, the court below found that Husband's earning capacity was slightly more than two hundred and eighty-five thousand dollars per year. This amount included Husband's base salary of two hundred thousand dollars with the remainder earned as bonus and royalty income.[3] Testimony was also offered about Husband's stock options received from 1992 through 1997. The options were offered as incentive which guaranteed Husband a fixed price if he wished to purchase company stock. The options had to be exercised by a certain date or they expired. At the time of the divorce, part of Husband's stock options were vested and part were unvested.

Wife claimed that her monthly expenses to care for herself and the minor child was eight thousand nine hundred and fifty dollars. This figure included the mortgage payment and upkeep on the parties' marital residence. Wife also requested alimony of thirty-five hundred dollars ($3,500) per month and child support of thirty-three hundred dollars ($3,300) per month. In addition, Wife requested that Husband be required to pay for the minor child's private school tuition of six thousand dollars ($6,000) per year.

Wife was awarded assets worth three hundred eighty-six thousand three hundred and four dollars and thirty six cents ($386,304.36) including the marital residence.[4] Husband was awarded assets valued at the exact same amount. However, in making a division of marital assets, the court found that Husband's stock options and royalty contract rights were not marital property.[5] In addition, the court awarded Wife alimony in futuro of two thousand dollars ($2,000) per month until Wife remarried or Husband reached the age of sixty-five. If Wife had not remarried when Husband reached sixty-five, the alimony in futuro would be reduced to one thousand dollars ($1,000) per month. The court awarded Wife rehabilitative alimony of two thousand dollars ($2,000) per month for six months, followed by one thousand dollars ($1,000) per month for thirty-six months. Husband was ordered to provide life insurance coverage in the amount of one hundred thousand dollars for

---

[3] Husband received royalty payments for his contributions to several books. In addition, Husband's company periodically provided him with stock options.

[4] In making this award, the court reduced the valuation of the residence by seven percent as the costs of selling. On appeal, Husband argues that this reduction was not justified due to Wife's stated intention to remain in the residence.

[5] The court did consider the royalty contract rights as part of Husband's income.

the benefit of Wife for so long as he was required to pay alimony or until he reached age sixty-five. Husband was not required to provide Wife with health insurance.

The court awarded two thousand and ninety-six dollars ($2,096) per month to Wife as child support, along with health insurance and medical expense coverage for the minor child. Husband was required to deposit an additional three hundred and fifty dollars per month in an educational fund for the minor child's future college expenses. The court did not order Husband to pay for the minor child's primary school education tuition. In making the child support award, which fell below statutory guideline amount based on Husband's income, the court noted that Husband was providing over two thousand dollars per month in expenses for the college education of the parties' two adult children. Wife was awarded an additional $11,923.50 for attorney's fees and discretionary and court costs. Wife appeals.

On appeal, Wife asserts that the trial court erred in excluding Husband's royalty rights and stock options from the parties' marital property. Wife also asserts that the trial court erred in failing to award a greater amount of alimony and child support. In addition, Wife requests attorney's fees incurred on appeal. Husband asserts two additional issues on appeal: the award of attorney's fees to Wife and the division of marital property.

**ANALYSIS**

Our review of this case is pursuant to Rule 13(d) of the Tennessee Rules of Appellate Procedure, which provides for a de novo review upon the record of the trial court's findings of fact, accompanied by a presumption of correctness, unless the evidence preponderates otherwise.

**A. Alimony & Life Insurance**

The court below awarded Wife both rehabilitative alimony and alimony in futuro, including an award of life insurance benefitting Wife. Wife asserts that the trial court erred in reducing the amount of her alimony in futuro once Husband reaches age sixty-five. In addition, Wife asserts that the trial court erred in automatically terminating Husband's duty to provide life insurance coverage for the benefit of Wife when Husband reached age sixty-five.

The trial court has broad discretion concerning the amount, type, and duration of spousal support based on the particular facts involved. The exercise of such power will not be interfered with absent a showing of abuse. Watters v. Watters, 959 S.W.2d 585, at 593 (Tenn. Ct. App. 1997) citing Aaron v. Aaron, 909 S.W.2d 408, 410 (Tenn.1995); Luna v. Luna, 718 S.W.2d 673, 675 (Tenn. Ct. App. 1986). Accordingly, this Court is not inclined to alter a trial court's award of alimony unless it is not supported by the evidence or is contrary to the public policy embodied in the applicable statutes. Brown v. Brown, 913 S.W.2d 163, 169 (Tenn. Ct. App.1994); Gilliam v.

Gilliam, 776 S.W.2d 81, 86 (Tenn. Ct. App.1988);  Ingram v. Ingram, 721 S.W.2d 262, 264 (Tenn. Ct. App.1986).

While the alimony analysis is factually driven,  the court also must balance several statutory factors including those enumerated in § 36-5-101(d).[6] Brown at 169; Denton v. Denton, 902 S.W.2d 930, 932 (Tenn. Ct. App.1995).  The most significant factors are need and the ability to pay.  Loyd v. Loyd, 860 S.W.2d 409 (Tenn. Ct. App.1993). In addition, the fault of a spouse in precipitating a divorce is a consideration when determining an alimony award.  See Tenn. Code Ann. § 36-5-101(d)(1)(K);  Gilliam, at 86.

---

[6]Tenn. Code Ann. §36-5-101(d) provides:

It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

(2) An award of rehabilitative, temporary support and maintenance shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances. Rehabilitative support and maintenance shall terminate upon the death of the recipient. Such support and maintenance shall also terminate upon the death of the payor unless otherwise specifically stated. The recipient of the support and maintenance shall have the burden of proving that all reasonable efforts at rehabilitation have been made and have been unsuccessful.

In the case at bar, the express findings of the trial court supported by the record include the following: Wife is financially disadvantaged due to her long absence from the working world; even with appropriate training, Wife could never enjoy the same standard of living as Husband; Husband is at fault for the marriage break-up. Based on the facts above, the trial court found that Wife was entitled to both rehabilitative alimony and alimony in futuro. Wife asserts that both the mandatory reduction of alimony in futuro and the termination of life insurance upon Husband's attaining the age of sixty-five is an abuse of discretion. The supreme court has stated:

> If an award of rehabilitative alimony is justified by the parties' circumstances, a trial court initially should award rehabilitative alimony only. An award of rehabilitative alimony pursuant to Tenn. Code Ann. § 36-5-101 must be predicated upon a finding that the recipient can be economically rehabilitated. Once awarded, rehabilitative alimony may be modified if the recipient's prospects for economic rehabilitation materially change. If rehabilitation is not feasible, the trial court may then make an award of alimony in futuro. Accordingly, a concurrent award of both types of alimony is inconsistent. At the time of the decree, a trial court must necessarily find that the recipient of alimony either can be or cannot be rehabilitated although that determination is subject to later modification. Allowing concurrent awards of alimony in futuro and rehabilitative alimony would require a trial court to engage in an act of clairvoyance. The trial court would not only be required to anticipate the duration necessary for rehabilitation but would also be required to anticipate the future needs of a spouse who, it has been determined, can be rehabilitated.

Crabtree v. Crabtree, No. M1997-00262-SC-R11-CV, slip op. at 5, (Tenn. Apr. 24, 2000). We therefore reverse the trial court's award of rehabilitative alimony and modify alimony in futuro to provide Wife with three thousand dollars ($3,000) per month until her death or remarriage. The award is further modified to provide that Husband shall keep life insurance of one hundred thousand dollars ($100,000) in effect for benefit of Wife so long as his alimony obligation continues.

## B. Health Insurance

On appeal, Wife also requests that Husband be required to provide health insurance coverage for Wife until the earlier of three years following the divorce or until Wife is eligible for health insurance through her employment. While Wife apparently sought this relief in the lower court, the court failed to address this issue.[7] On review, we find that Wife's request for health insurance coverage is well taken and should have been granted by the court below.

---

[7]Wife requested that Husband provide COBRA health insurance at his expense. The cost of this insurance is approximately one hundred and eighty dollars per month.

Pursuant to §36-5-101(f)(1) of the Tennessee Code, the court can order an obligor spouse to provide health insurance coverage to the dependant spouse.[8] See Gillam v. Gillam, No. 01A01-9609-CV-00414, 1997 WL 187313, at *2 (Tenn. Ct. App. April 18, 1997) Based on the relative positions of the parties, we hold that Wife is entitled to the requested coverage. We note, however, that this coverage is limited to no more than three years, and Husband's obligation ceases earlier if Wife becomes eligible for insurance through her employment. Accordingly, the trial court's failure to order Husband to provide this coverage is hereby modified to include such coverage.

## C. Child Support

Wife asserts that the lower court erred in deviating from the statutory child support guidelines based on Husband's support of the parties' adult children and Wife's alimony award. Wife asks that Husband be required to pay the full amount authorized by the child support guidelines. In addition, Wife requests that Husband pay for the minor child's private school tuition. For the following reasons, we agree.

While the trial court's findings of facts are entitled to a presumption of correctness on appeal, the lower court's discretion is tempered by the child support guidelines. TENN. R. APP. P. 13 (d); Jones v. Jones, 930 S.W.2d 541, 544 (Tenn. 1996). Statutory authority provides for a rebuttable presumption that the percentage amount of child support provided in the guidelines is the correct amount. However, "[the guidelines] are subject to deviation upward or downward when the assumptions on which they are based do not pertain to a particular situation." Nash v. Mulle, 846 S.W.2d 803, 805 (Tenn.1993) In order to justify a downward deviation from this amount, the trial court must make written findings outlining the reasons for this deviation. These reasons must show that the deviation is either in the best interest of the child; that the child support guidelines would be unjust or inappropriate; or needed to maintain equity between the parties. Tenn. Code Ann. §36-5-101(e)(1).[9] The Tennessee Supreme Court discussed when such deviations were acceptable in Jones v. Jones:

---

[8] Tenn. Code Ann. §36-5-101(f)(1) provides:

The court may direct the acquisition or maintenance of health insurance covering each child of the marriage and may order either party to pay all, or each party to pay a pro rata share of, the health care costs not paid by insurance proceeds. *The court may also direct a party to pay the premiums for insurance insuring the health care costs of the other party.*

[9] Tenn. Code Ann. §36-5-101(e)(1) provides: In making its determination concerning the amount of support of any minor child or children of the parties, the court shall apply as a rebuttable presumption the child support guidelines as provided in this subsection. If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties. Findings that the application of the guidelines would be unjust or inappropriate shall state the amount of support that would have been ordered under the child support guidelines and a justification for the variance from the guidelines.

"While § 36-5-101(e)(1) does authorize deviation in order to ensure equity between the parties, and while downward deviation is clearly not prohibited, the trial court's authority to do so must be considered in light of the provisions dealing with such deviation--Rule 1240-2-4-.04(2) and (4). Although not exclusive, those subsections provide for downward deviation in three instances: (1) where DHS has taken custody of the child(ren) pursuant to a neglect, dependency, or abuse action; (2) where the child(ren) spend more visitation time with the obligor than is assumed by the guidelines; and (3) in cases in which the obligor is subjected to an "extreme economic hardship," such as where other children living with the obligor have extraordinary needs. Therefore, the guidelines expressly provide for downward deviation where the obligee has utterly ceased to care for the child(ren); where the obligee clearly has a lower level of child care expense than that assumed in the guidelines; and where the obligor is saddled with an "extreme economic hardship." Although the rule does not purport to set forth an exhaustive list of instances in which downward deviation is allowed, these specific instances nevertheless are a powerful indication as to the types of situations in which it is contemplated under the guidelines."

Jones, at 545.

In the case at bar, the trial court based its deviation from statutory guidelines on Husband's support of the parties' adult children and Wife's "substantial" alimony award. While we agree that Husband's continued contribution to the living and educational expenses of the adult children is admirable, it is an inappropriate basis for deviating from the minor child's entitlement under the guidelines. Pursuant to the guidelines, the parties' minor child is entitled to twenty-one percent of the obligor's "net income." See TENN. COMP. R. & REGS. Tit. 10, Ch. 1240-2-4-.03. Upon review, we find no adequate justification for the deviation from this percentage amount. Therefore, the trial court's decision on this issue is reversed. This issue is remanded to the trial court for a determination of Husband's net income.[10]

Wife also asks that Husband be required to pay the minor child's private school tuition. Pursuant to the statutory guidelines, the court can authorize an upward deviation if it finds that the child will incur "extraordinary educational expenses." See TENN. COMP. R. & REGS. Tit. 10, Ch. 1240-2-4-.04(1)(c). Furthermore, the obligor spouse cannot reduce his child support payments by the private school expenses. Dwight v. Dwight, 936 S.W.2d 945, 950 (Tenn. Ct. App. 1996). In order to constitute "extraordinary educational expenses," the party requesting the deviation must show both that private school would benefit the child and that the parties can afford the expense. Jankovich v. Jankovich, No. 35801-A-01-9111-CV00427, 1992 WL 81446, at *3-*4 (Tenn. Ct. App. April 24, 1992).

---

[10] The court below found that Husband had an earning capacity of approximately two hundred and eighty-five thousand dollars a year. In order to determine the correct amount of child support, the court below must determine Husband's *net income.*

-7-

Based on the standard set forth above and our review of the record, we hold that Husband should be responsible for the private school expenses of the parties' minor child. The child has been attending the same private school since kindergarten at an expense of about five hundred dollars per month. Without a doubt, the continuity of his school experience as well as the smaller classes and individual instruction available in the private school setting will benefit the child. In addition, based on the child's previous attendance as well as the Husband's ability to provide for the adult children's educational expenses, Husband is clearly able to afford the expense. Accordingly, the trial court erred in failing to require Husband to pay this expense. The decision of the trial court is hereby reversed on this issue.

### D. Marital Property

Wife asserts that the trial court erred in excluding Husband's royalty rights and stock options from the parties' marital property. Husband asserts that the trial court erred in allocating a disproportionate amount of the marital assets to Wife. The lower court did, however, consider both the stock options and the royalty income in computing Husband's income for the purposes of alimony and child support. Based upon the following, we find that the trial court did not err in the division of the marital assets and that any error in the classification of marital assets was harmless.

It is necessary for the trial court to classify the parties' property as either separate or marital before making an equitable division of the marital estate. Watters v. Watters, 959 S.W.2d 585, at 588 (Tenn. Ct. App. 1997). "Marital property" is defined as follows:

"[A]ll real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date."

TENN. CODE ANN. § 36-4-121(b)(1)(A). Pursuant to this definition, Wife asserts that both the stock options and the royalty income qualify as marital property and should have been subject to division by the court.

Testimony at trial indicated that Husband has both vested and unvested stock options. These options may or may not be redeemable at a profit, depending on the price of the stock on the open market. As this court recently stated, "We do not believe unvested property that is so contingent and so speculative should be considered marital property." Brandon v. Brandon, No. 01-A-01-9805-CV-0023, 1999 WL 248652, at *5 (Tenn. Ct. App. April 29, 1999). However, vested stock options obtained as a result of efforts expended during the marriage should be subject to equitable

-8-

distribution. <u>Johnson v. Johnson</u>, No. 02A01-9703-CH-00069, 1998 WL 835562, at *4 (Tenn. Ct. App. Dec. 3, 1998) citing <u>Pascale v. Pascale</u>, 140 N.J. 583, 660 A.2d 485, 498 (N.J.1995). Wife also claims that the trial court erred in excluding Husband's royalty income from the division of marital assets. Testimony regarding the royalty income indicated it is highly variable and will likely diminish significantly in the future. As a result, the trial court considered the royalty and the stock options as part of Husband's income rather than part of the marital estate subject to equitable division.

In light of the mixed character of these assets, and Wife's generous marital property award, we find that the trial court did not err in excluding the stock options and the royalty income from the division of marital assets. As stated above, the trial court is granted broad discretion in adjusting and adjudicating the parties' interest in all jointly owned property. Its decision regarding division of the marital property is entitled to great weight on appeal. <u>Watters</u> at 590; citing <u>Batson v. Batson</u>, 769 S.W.2d 849, at 859 (Tenn. Ct. App. 1988). The fairness of the property division is judged upon its final results. With the forgoing in mind and considering all relevant factors, we do not find the final results of the trial court's distribution to be inequitable.

### E. Attorney's Fees

Husband asserts that the trial court erred in requiring Husband to pay Wife's attorney's fees incurred in the proceedings below. Wife asserts that the trial court did not err, and requests attorney's fees incurred on appeal. For the following reasons, we find that the trial court did not err. In addition, we hold that Wife is entitled to attorney's fees incurred on appeal.

In a divorce case, attorneys' fees may be properly allowed as part of the alimony awarded. <u>Raskind v. Raskind</u>, 325 S.W.2d 625 (Tenn. Ct. App. 1959). The decision to grant attorney's fees is largely in the discretion of the trial court, and this court will not interfere unless there is a clear showing of abuse of that discretion. <u>Aaron</u> at 411. When the spouse seeking an award of legal expenses lacks sufficient funds to pay her expenses or would be required to deplete her resources, the award of legal expenses is appropriate. <u>Brown</u>, 913 S.W.2d at 170; <u>Butler v. Butler</u>, 680 S.W.2d 467 (Tenn. App. 1984). In addition, the trial court has the authority to make an additional award to an innocent spouse in order to offset the legal expenses resulting from the divorce. <u>Luna</u> at 676.

Based upon the foregoing, as well as the circumstances presented in this case, we find that Wife is entitled to an award of legal expenses incurred both in the proceedings below and on appeal. Accordingly, the decision of the trial court on this issue is affirmed, and the matter is remanded for consideration of attorney fees on appeal.

## CONCLUSION

For the foregoing reasons, the decision of the trial court is hereby affirmed in part, reversed in part, modified in part, and remanded. Costs of appeal are taxed to Appellee, Rolf Birger Zettersten, for which execution may issue, if necessary.

_____
ALAN E. HIGHERS, JUDGE