# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON

_____

|   |   |   |
|---|---|---|
| **DIANE SLAWSON WATTERS**, | ) | Shelby County Chancery Court |
|  | ) | No. 23808-2 R.D. |
| Plaintiff/Appellee. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9511-CH-00254 |
|  | ) |  |
| **WILLIAM G. WATTERS and** | ) |  |
| **GENERAL MILLS, INC.**, | ) |  |
|  | ) |  |
| Defendants/Appellants. | ) |  |
|  | ) |  |

**FILED**

**June 24, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

From the Chancery Court of Shelby County at Memphis.
**Honorable Floyd Peete, Jr., Chancellor**

**James D. Causey**, Memphis, Tennessee
**Jean E. Markowitz**, Memphis, Tennessee
Attorneys for Defendant/Appellant William G. Watters.

**Daniel D. Warlick**, Nashville, Tennessee
Attorney for Plaintiff/Appellee.

OPINION FILED:

**AFFIRMED AS MODIFIED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**LILLARD, J.**: (Concurs)

This case concerns the dissolution of the fourteen year marriage of William G. Watters (Husband) and Diane Slawson Watters (Wife). Husband has appealed from the final decree alleging error in the trial court's classification and division of the marital estate, award of alimony and calculation of child support and in certain evidentiary rulings. For reasons hereinafter stated, we affirm as modified.

The parties were married in July 1980. At the time of trial, Husband was 44 and Wife 47. One child was born of the marriage, a son, Stephen Matthew, age 13 at the time of trial. Wife has two adult children from a prior marriage. During the marriage, Wife was primarily a homemaker and student. She discontinued her studies after their son was born and until he began school full-time. She earned a master's degree in psychology in May 1993. She is currently enrolled at the University of Memphis pursuing her doctorate in counseling education and expects to graduate in August 1998. Husband has been employed at General Mills for 23 years. He currently earns a net base salary of approximately $4,890 per month plus an annual bonus. Wife has a family history of breast cancer and has undergone a double mastectomy. Husband is in good health. The parties separated in February 1993.

The trial court awarded the divorce to Wife on stipulated grounds of inappropriate marital conduct. Additionally, the court awarded the marital residence, which it valued at $157,393, to Wife and its accompanying indebtedness of $97,245; held that the parties had previously divided the marital personalty; gave Wife her separate property totaling $12,990 and Husband his separate property totaling $3,915; awarded marital property to Wife totaling approximately $326,000 to include the marital residence, the General Mills Voluntary Investment Plan in Husband's name (401K) in the amount of $185,543 and the proceeds less capital gains tax from the exercise of certain General Mills stock options in the amount of $47,960; awarded Husband marital property totaling approximately $247,000 to include certain General Mills' stock options ($75,593) and restricted stock options ($15,995) and his pension benefit with a present value of $139,423; ordered Wife responsible for marital debt in the amount of $13,346 and Husband responsible in the amount of $12,545; awarded custody of the minor child to Wife; ordered Husband to pay $1,027 per month in child support plus 21% of his annual bonus, less appropriate deductions for income taxes and social

security, and all private school tuition and expenses;[1] ordered Husband to maintain medical insurance on Wife and child and be responsible for 50% of the uncovered medical expenses; ordered Husband to pay Wife $1,900 per month in alimony for seven years or until her death or remarriage; ordered Husband to pay Wife's attorney's fees in the amount of $38,798.66; and ordered Husband to maintain a $200,000 insurance policy on his life with Wife as beneficiary for five years with the amount of coverage to then drop $20,000 per year for two years.[2]

Husband identifies the issues for review as follows:

    1. Whether the trial court erred in its evaluation, classification and inclusion of the marital property.

    2. Whether the trial court erred in the division of the marital estate.

    3. Whether the trial court erred in its awards of alimony to Wife.

    4. Whether the trial court erred in admitting Pickler's testimony regarding Wife's accumulation of funds for child's college education and Wife's testimony regarding college education of the son under the guise of lifestyle of the parties.

    5. Whether the trial court erred in refusing to admit a settlement proposal when the court relied on the refusal to respond to said proposal in awarding attorney fees.

    6. Whether the trial court erred in ordering disclosure of working notes of an expert and erred in allowing the introduction of those documents into evidence.

    7. Whether the trail court erred in allowing the introduction of Wife's "[time line]" of Husband's misconduct when grounds had been stipulated.

    8. Whether the trial court erred in ordering the formula to be used in determining the social security deduction for child support as to Husband's bonus.

Our review of this case is pursuant to Rule 13(d) T.R.A.P., which provides for a *de*

---

[1] Wife's pretrial affidavit lists their son's school tuition for enrollment in the 9th grade at Christian Brothers High School at $4,000 per year plus an additional $200 for textbooks.

[2] Upon motion, the trial court entered an order granting a stay as to the final decree pending the outcome of this appeal with certain exceptions to include Wife's right of immediate access to one-half of Husband's 401K. The court entered a qualified domestic relations order to this effect.

*novo* review upon the record of the trial court's findings of fact, accompanied by a presumption of correctness, unless the evidence preponderates otherwise. As our divorce statutes address only the division of "marital" property, it is incumbent upon the trial court to first classify the parties' property as either separate or marital before making an equitable division of the marital estate. *Wade v. Wade*, 897 S.W.2d 702, 713 (Tenn. App. 1994); *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. App. 1988). Thus, we begin with consideration of Husband's first issue pertaining to the trial court's classification and evaluation of the couple's property.

Husband asserts that the trial court's valuation of the marital residence results in an award of additional equity to Wife which was not included within the marital estate. From the record, it is clear that numerous testimonies were extended regarding the value of the marital home ranging from approximately $143,000 to $175,000. Husband submits that eight opinions regarding value were proffered with the trial court "arbitrarily" taking five and averaging them to arrive at a value. The record indicates that Wife's Rule 15 affidavit states a value of $144,800. At trial, her testimony established a value of $143,000 or "a little bit more." Husband valued the home in his affidavit at $167,000 and $175,000 at trial. Don Ralph, a real estate appraiser, valued the home as of December 7, 1994 at $167,000. Ralph also testified regarding the square footage of five comparable sales. Wife submitted an exhibit averaging the square footage comparables to arrive at a value for the marital residence of $155,365. The final decree indicates that the trial judge attributed a value by Husband of $175,000 and $144,800 by Wife. He then took those two figures, Ralph's value of $167,000, the Shelby County Assessor's value of $144,800 and the average of comparables ($155,365) and averaged them to arrive at a value of $157,393.

Husband contends that the method utilized by the trial court failed to consider all of the evidence presented and that the home is properly valued based on the testimony of Ralph whose appraisal was conducted nearer in time to the final divorce hearing date. Husband cites *Koch v. Koch*, 874 S.W.2d 571 (Tenn. App. 1993), for the proposition that "[m]arital property is to be evaluated 'as of a date as near as reasonably possible to the final divorce hearing date.' " *Koch*, 874 S.W.2d at 576 (quoting T.C.A. § 36-4-121(b)(1)(a)). *Koch* further states:

The value of a marital asset is determined by considering all

> relevant evidence regarding value. . . . The burden is on the parties to procure competent evidence of value, and the parties are bound by the evidence they present. . . . Thus the trial court, in its discretion, is free to place a value on a marital asset that is within the range of the evidence submitted.

*Koch*, 874 S.W.2d at 577 (quoting *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. App. 1987)) (citations omitted).

As the valuation of an asset is a question of fact, there is a presumption on appeal that the trial court's valuation is correct. *Smith v. Smith*, 912 S.W.2d 155, 157 (Tenn. App. 1995). Clearly, the record reflects that the value placed upon the marital home by the trial court is within the range of the evidence submitted. We further do not find the record to indicate that the trial court failed to consider all relevant evidence when making its decision.

Husband next asserts that the trial court erred in its evaluation and classification of the marital personalty. T.C.A. § 36-4-121(b)(1)(A) defines "marital property" as

> [A]ll real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.

Husband contends that the trial court failed to properly include within the marital estate certain bedroom furniture, valued at $1,760, which Wife testified was their son's separate property. As Wife's award of custody and the marital home is unchallenged, these items clearly should remain with Wife. We find that, properly, they should have been included within the marital estate; however, we hold such error harmless considering the overall distribution of assets. Husband further contends that the trial court incorrectly valued certain property determined to be his separate property: golf clubs and scuba equipment valued by the court at $3,300. Husband insists that the record properly reflects a value of $3,600. We, like Wife, fail to see how this alleged error prejudices Husband as it is to his benefit.

It is also asserted that the trial court erred in failing to include "unaccounted for portions of his 1993 bonus" as marital property. The proof shows that when the parties separated in February 1993, Husband continued to deposit his pay checks and his annual bonus for 1993 into the couple's joint bank account from which Wife continued to pay their bills. In return, Wife paid Husband $1,500 per month for his expenses. This practice continued for one year. Husband's 1993 bonus after taxes was $20,065. Wife testified that during this time she also paid $4,500 for their son's school tuition, $2,500 for her school tuition and another $2,500 for taxes. Husband argues that the unaccounted for remainder of $10,565 should have been included in the marital estate and as a part of Wife's division. Wife testified as follows regarding the family's customary use of Husband's bonus money: "We have always lived on the total amount of . . . what he gets regularly plus his bonus every year. So . . . it's put into . . . a savings account and drawn on all year long for various expenses during the year." Husband agreed that "bills were paid out of that account." Wife testified that no monies remain from the 1993 bonus. Husband testified that he withdrew no funds from the account after the couple's separation.

It is clear that both parties had access to this joint account which was primarily used for household and living expenses. Such use at least to some extent benefitted Husband as well as Wife. We find no error by the trial court in failing to include a portion of Husband's 1993 bonus as marital property.

Finally, as to Husband's first issue, it is asserted that the trial court erred in valuing the marital estate to consider the tax consequences to Wife upon the exercise of the stock options awarded her but not those awarded Husband. The trial court awarded Wife stock options with a net value of $47,960 and Husband stock options with a gross value of $75,593. We find this alleged error more properly addressed under Husband's second issue concerning distribution of the marital estate. Our divorce statutes require an equitable division of the marital estate without regard to fault. T.C.A. § 36-4-121(a). To this end, the trial court is granted broad discretion in adjusting and adjudicating the parties' interest in all jointly owned property. *Batson*, 769 S.W.2d at 859. Its decision regarding division of the marital property is entitled to great weight on appeal. *Id*.

In addition to the foregoing, Husband alleges error in the trial court's division of

assets when determining that the parties had previously divided the personal property in the home and using the present day value of Husband's defined benefit plan (pension) when awarding this asset to him, as opposed to dividing same by a qualified domestic relations order. As to the latter, Husband argues that by using the present day value and offsetting it with liquid or semi-liquid assets, he is left with insufficient liquidity with which to pay his outstanding debt in excess of $60,000. He asserts "that the estate is not large enough to use this method." According to the testimony of Robert Winfield, a certified financial planner, Husband's compensation consists of a base salary, $83,822, "small variable amounts" that pertain to company sales contests, his bonus dependent upon national and regional performance, certain reimbursed expenses and a variety of "benefit plans that also contribute taxable income to his W-2 each year." Winfield stated that from 1989 to 1993, Husband's annual income increased at a rate of 11% per year.

In dividing the marital estate, the trial court expressly found "that [Husband] has relatively greater ability than [Wife] to acquire future capital assets and income . . . ." We find the record to support this finding. Husband's gross annual income in 1994 was $135,254.99 and his average annual earnings from 1991 - 1994 were approximately $138,000. Although Husband was awarded less liquidity, the record clearly demonstrates a greater earning ability on his part.

Husband argues that his income for the years 1991-94 includes a substantial amount attributable to bonuses and the sale of stock options, the remainder of which have been divided as marital assets. He insist that without the exercise of his stock options, which is merely the value of a marital asset awarded him, his annual income is primarily limited to his base salary and bonus. The record indicates that Husband has received a bonus from General Mills every year since 1989. Moreover, evidence introduced by Husband reveals that even without Husband's compensation attributable to stock, he averaged an annual income from 1990 to 1994 of approximately $113,000.

In this case, the trial court awarded Husband approximately $100,000 in liquid assets excluding any tax consequences on stock options. He argues that Wife was awarded over $250,000 in liquid assets. The record indicates that she was also ordered to pay marital debt in excess of $110,000 when including the house note and that portion of her attorney's fees ($19,000) for which the court ordered her responsible. Although the tax consequences to Husband in exercising his stock

options were not included in the trial court's calculations, we are persuaded that such was done in Wife's case because of her immediate receipt of these assets.

As to the furniture in the marital home, Husband is correct as to Wife's testimony that with the exception of a t.v. and stand and a few other items, all furniture remained in the marital home. However, she stated that many of the articles of furniture belonged to her prior to the marriage. This is confirmed by the fact that she was awarded furniture and furnishings in the marital home (including jewelry and furs) of $12,990 as her separate property. Husband was also awarded furniture and furnishings in the marital home valued at $615 as his separate property. Wife commented that "I assume there is furniture that we could talk about dividing. . . ." The final decree awards "furniture and furnishings" in the marital home to Wife in the amount of $10,480 and "furniture, furnishings and clothes located at Husband's apartment" in the amount of $6,350 as marital property.

It is well established that the trial court's division of the marital estate need not be equal to be equitable. *Wade*, 897 S.W.2d at 717. Generally, the fairness of the property division is judged upon its final results. *Id*. Considering all relevant factors including those enumerated in T.C.A. § 36-4-121(c), we do not find the final results of the trial court's distribution to be inequitable.

We next address the issue regarding the award of alimony to Wife. Husband challenges only the amount and duration of the rehabilitative award and not Wife's entitlement per se. He argues that alimony should extend no longer than three years in an amount less than that awarded. It is his position that Wife is capable of obtaining adequate employment with the degrees she currently possesses and certainly when she receives her doctorate in 1998. Husband further asserts that the trial court did not properly consider the statutory factors set forth in § 36-5-101(d), particularly the division of the marital estate and his ability to pay. Finally, it is asserted that in assessing Wife's needs, the court did not properly consider Wife's failure to pursue possible financial aid to defray her academic expenses.

Wife testified that she will complete the requirements necessary for private practice

in the year 2001. She began her doctorate program in counseling and personnel services at the University of Memphis in September 1994 and expects to graduate in August 1998 if she continues "taking the course load that they have programed for [her]. . . ." To engage in private practice, she will then have to complete an additional requirement of 2000 hours of supervision. She estimated her total school expenses at $2,000 per semester. She was further questioned:

> Q.     . . . . Have you applied for a graduate [assistantship]?
>
> A.     No, I haven't.
>
> Q.     And why not?
>
> A.     Well, I was given to believe that in the income bracket I was in that I'd be at the bottom of the list . . . our program has only been very recently given a couple of slots . . . as far as [assistantships] . . . .
>
> The [Ph.D.] candidates get the bulk of the [assistantships], and then whatever is left is given to the people that are in the [Ed.D.] program and in the [Ed.S.] program, . . . .
>
> . . . .
>
> A.     The other component of that [assistantship] idea is that I would have to work 20 hours a week on campus . . . in addition to going to school. And as I said earlier, I've tried to mold my time around Steven's comings and goings from school. And if I were to have an [assistantship], that becomes increasingly difficult to manage his school life and social components around the rest of his life with going to school, too.

Ronnie Priest, an assistant professor in the Department of Counseling, Educational Psychology and Research at the University of Memphis and director of the Ed.D. program, testified that he had been involved in the placement of approximately 90 students in the area of counseling. After graduating, Wife's employment opportunities "range . . . from working in an agency [such as] a community mental health center, to teaching . . ." with an annual salary range of $25,000 (typically the initial salary for someone working in an agency) to $35,000 (initial salary for assistant professor). Priest related that someone employed in an agency with only a master's degree would earn an initial annual salary of approximately $17,000. Priest stated that if Wife wishes to enter private practice she will need an additional 2 to 2-1/2 years of supervision after obtaining her Ed.D. prior to becoming licensed. According to Priest, Wife will "more than likely" not get paid by her supervisor and will "wind up having to pay the supervisor." Afterwards, her annual salary will be contingent

on the clientele she has been able to establish and "could range anywhere from $25,000 to $50,000 a year." Priest stated that upon graduating Wife would not be offered a position at the University of Memphis because "we don't hire our own." The only other institution in the Memphis area offering such academic position is Christian Brothers.

Priest stated that the doctorate degree Wife is pursuing requires a minimum of 60 hours above her master's degree, a dissertation, an internship and a residency program which is a research project. The approximate cost per semester for a full-time student is $2,500. There is a hierarchy in the department regarding the granting of graduate assistantships with preference first given to "counseling-psych" students and then divided between "educational-psych" and counseling students. Wife is in the latter category. Approximately 148 students are enrolled in the counseling department.

David Ciscel, an economics professor at the University of Memphis and dean of its graduate school testified that full-time enrollment at the University, including summer school, to obtain the Ed.D. degree costs approximately $3,000 per year plus an additional $1,500 a year for books, supplies and fees. Twelve teaching or research assistantships are available for the doctorate student in the Ed.D. department.

The trial court found the cost for Wife to obtain her doctorate degree to be $18,000 and that after licensure and entering private practice in 2001 she could earn $35,000 to $50,000 per year "[g]iven four years to develop her practice." The court determined Husband's net base salary to be $4,890.47. With his bonus and other benefits, as previously stated, he has averaged approximately $138,000 a year for a gross monthly income of over $11,000. His average annual income over the past four years excluding his stock option benefits is approximately $115,000 with a monthly gross income of approximately $9,600.

Husband asserts that even with his bonus, (which over the past six years has been an average of $30,178) he is unable to pay the amount of alimony awarded when considering his portion of the marital debt and the division of assets. We note that the trial court set child support at $1,027 per month plus 21% of Husband's bonus with which he does not take issue, except to the calculation

of his social security deduction which will be addressed subsequently. Husband lists his monthly expenses at $6,474.86 which includes $495 for credit card and other debt (awarded to him in the division of assets) $60 for the child's sports equipment and clothes, $403 for debt to the IRS, $1,800 for alimony[3] and $1,026 for child support. Adjusting Husband's calculations to coincide with the trial court's awards for alimony and child support, we arrive at total monthly expenses of approximately $6,500.00. Wife lists monthly expenses in her pretrial affidavit at $6,992.70 to include uninsured medical expenses, school expenses for the parties' son as well as a college trust fund for the child in the amount of $983. Husband asserts that these latter expenses should not be included in determining Wife's needs since he has been ordered to assume one-half of uninsured medicals for Wife and child as well as the latter's school tuition and expenses. He further asserts that he cannot be ordered to pay the child's college expenses under the guise of alimony. Wife's calculations also include $700 per month as payment for certain debt awarded in the division of assets and her attorney's fees. Even when subtracting these amounts, however, Wife still has monthly expenses in excess of $4,500. The record is clear that Husband's alimony payments of $1,900 per month will be Wife's sole source of support for several years other than the assets received in the property division.

The trial court has broad discretion concerning the amount and duration of spousal support. Its decision is factually driven and requires a balancing of factors including those enumerated in § 36-5-101(d). **Brown v. Brown**, 913 S.W.2d 163, 169 (Tenn. App. 1994). The most significant factors are need and the ability to pay. **Loyd v. Loyd**, 860 S.W.2d 409 (Tenn. App. 1993). The express findings of the trial court on this issue also include the following, which we find supported by the record: During at least the last five years of the marriage, the parties enjoyed a standard of living in excess of $100,000; Wife fulfilled her role as homemaker; and "[t]he relative fault in the case rests heavily against [Husband]." We conclude that the amount and duration of alimony is warranted under these facts and that there was no abuse of discretion by the trial court in this regard.

Husband also challenges the alimony award as it relates to payment of Wife's medical

---

[3]This amount was set by the divorce referee as temporary support.

insurance and expenses. "When one party to a divorce is employed and is able to secure group health care insurance through the employer and the other party is in poor health and would have difficulty in securing health care insurance, the court may require the maintenance of health care insurance for the other party." W. Walton Garrett, *Tennessee Divorce, Alimony & Child Custody*, § 13-9 (1996 ed.). Wife is currently covered under Husband's company policy. Based on Wife's past medical history, involving a double mastectomy taken as a preventative measure due to a family history of breast cancer and surgery for uterine fibroid tumors, both for which she continues to be monitored, the trial court determined that Wife "will have trouble obtaining insurance" and ordered Husband to "maintain [Wife's] medical insurance coverage and . . . pay said premiums and fifty . . . percent of uncovered expenses . . . ." Husband contends that the record does not support the trial court's finding. Moreover, it is asserted that the trial court is without statutory authority to make an award of uncovered medical expenses and that it was error to establish the award indefinitely which, in effect, renders an award of alimony *in futuro*.

First, Husband is correct in arguing that the record fails to show Wife's un-insurability or future difficulty in obtaining health insurance. The only testimony in this respect is that of Wife stating that "the medical problems that I have are the [kind] . . . that would preclude me from probably getting insurance on my own . . . ." Under the present circumstances, we believe it appropriate to modify the final decree to limit Husband's obligation in this regard to seven years. We, however, are not persuaded that the trial court lacks authority to hold him responsible during this time period for one-half of Wife's uncovered medicals. The statute relied upon by Husband, T.C.A. § 36-5-101(f), states, in part, that "[t]he court may also direct a party to pay the premiums for insurance insuring the health care costs of the other party." Granted, the statute does not expressly refer to uncovered medicals. The trial court, however, has been granted broad statutory power in establishing the type of alimony award necessary based on the particular facts involved. The exercise of such power at the trial court's discretion will not be interfered with absent a showing of abuse. *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995); *Luna v. Luna*, 718 S.W.2d 673, 675 Tenn. App. 1986). We find the fact that the trial court chose to specifically designate where a portion of Husband's alimony payments will be directed is inconsequential.

Husband has also challenged the award of attorney's fees to Wife. The trial court

awarded Wife two-thirds of her legal expenses or $38,798.66. In awarding these fees, the trial court held as follows:

> As to attorney's fees, Mr. Watters broke the marriage contract without justification. He refused to respond to the Marital Dissolution Agreement until presenting a proposed ruling on the morning of trial. Mr. Watters' conduct before and during the case, forced Mrs. Watters to trial. The trial was expensive. It required Mrs. Watters' attorney to spend a great deal of time, effort, and expertise for her representation and it required the retention and use of expert witnesses.

Contemporaneous with this issue is Husband's assertion that the trial court erred in refusing to admit the settlement proposal which he contends was "unreasonable" and "demanded payments to Wife in excess of [his] income." Wife's counsel testified that the proposed marital dissolution agreement was prepared and sent to Husband "early on" and that no response was forthcoming until Husband presented his proposed ruling on the first day of trial. Counsel further testified regarding numerous expert witnesses which were required in the case and his problems obtaining discovery from opposing counsel. He stated that "we've had to litigate every issue that's come up" and that the expenses would have been reduced had discovery been forthcoming in a timely fashion. On cross-examination, Wife's counsel denied that the proposal demanded more than Husband "took home."

Husband argues that the settlement proposal should have been admitted to establish its unreasonableness and to address the credibility of opposing counsel. We are inclined to agree with Wife that the trial court's decision appears influenced not by the contents of the proposal or whether or not it was accepted, but Husband's failure to respond to it in any manner (to further settlement negotiations) until the first morning of trial, which is undisputed. In any event, we find any error in failing to admit the proposal harmless. The record supports the award of attorney's fees to Wife when considering the marital debt awarded Wife, her monthly expenses, which exceed Husband's monthly alimony obligation, and her financial situation for the next several years until completion of her studies and establishing of her career. The award of legal expenses is appropriate when the spouse seeking them lacks sufficient funds to pay her expenses or would be required to deplete her resources. *Brown*, 913 S.W.2d at 170.

There are certain other evidentiary matters with which Husband takes issue. He first asserts that the trial court erred in allowing testimony regarding the parties' desire to send their son to college and the monthly amount Wife would need to save in order to do so under the theory that it revealed the lifestyle of the parties. Husband submits that the overall result to his prejudice is an award of alimony in excess of his ability to pay. We have already determined the appropriateness of the alimony award and thus find any error in the admission of this testimony harmless. Husband also questions the trial court's allowance of a "time line" outlining Husband's misconduct during the marriage when the grounds for divorce were stipulated. The record does not indicate any prejudice to Husband in this regard. The matter was heard before the judge sitting without a jury and Husband had already admitted in his answer to inappropriate marital conduct and acts of adultery. We further do not find prejudicial error in the trial court's ordering disclosure of certain "working documents" of Husband's expert witness and allowing introduction of the documents into evidence. Husband insists that the documents submitted did not contain data underlying the expert's opinions, as required under Rule 706, Tennessee Rules of Evidence, and were admitted for the sole reason of revealing the expert's handwritten note which could be construed as an unfavorable comment regarding the trial judge. There is ample evidence in the record to support the trial court's findings regarding division of the marital estate and the award of alimony. We do not find its decision to display undue prejudice toward Husband.

Turning to the last issue, Husband alleges error in the manner in which the trial court calculated the social security deduction from his bonuses for purposes of child support. The trial court awarded 21% of Husband's bonus to Wife as child support "after deducting for income taxes and social security . . . ." The court determined that the deduction for social security "shall be in accordance with the net social security percentage paid by [Husband] for the current calendar year calculated as follows: Total Social Security paid for current year [divided by] Total Gross Income for previous year = Percentage (%) of Social Security; Gross Amount of Bonus x % of Social Security = Amount of Social Security to be deducted from gross bonus for purposes of calculating child support."

We are inclined to agree with Husband that the deductions for social security as prescribed in the Child Support Guidelines, specifically Tenn. Comp. R. & Regs. Title 1240 ch. 2-4-

.03(4), are to be applied in this case. We are unable to determine from the record the reasoning for the trial court's deviation as there are no written findings.

It results that the judgment of the trial court is modified to provide that Husband shall be responsible for maintaining medical insurance for Wife and shall pay one-half of her uncovered medical expenses for seven years (or until her death or remarriage) - the ceasing of such obligation to coincide with the termination of Husband's rehabilitative alimony obligation. The judgment is further modified to reflect a child support award inclusive of Husband's bonus with deductions for social security as set forth under the Child Support Guidelines. The judgment is in all other respects affirmed. Costs are assessed equally against the parties.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
LILLARD, J. (Concurs)