IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 16, 2001 Session

## CYNTHIA LEE COPPAGE v. GRADY OTHER COPPAGE

**Appeal from the Circuit Court for Hamilton County**
**No. 98-D-1482      L. Marie Williams, Judge**

**FILED APRIL 19, 2001**

**No. E2000-01630-COA-R3-CV**

At issue in this divorce case is the trial court's valuation and division of two parcels of real property and the court's decree with respect to the parties' credit card debt. The husband appeals, arguing that the trial court erred (1) in its valuation and division of the two properties; and (2) in denying his post-trial motion to sell the two parcels and divide the proceeds equally. The wife asserts as an additional issue that the husband should be required to place in his sole name the credit card debt assigned to him by the trial court. We find and hold that the wife's request is a reasonable one, and, accordingly, modify the trial court's judgment so as to require the husband to convert the debt over into his name by no later than December 31, 2001. As modified, the judgment is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed as Modified; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Alan R. Beard, Chattanooga, Tennessee, for the appellant, Grady Other Coppage.

Richard A. Schulman and Brenda R. Grant, Chattanooga, Tennessee, for the appellee, Cynthia Lee Coppage.

**OPINION**

I. *Introduction*

Cynthia Lee Coppage ("Wife") met Grady Other Coppage ("Husband") in October, 1995. Following their engagement in December, 1995, Wife sold her home, quit her job, and moved to Chattanooga where Husband lived. They married on April 9, 1996. The parties separated in early 1998.

Wife filed for divorce on June 30, 1998. Husband counterclaimed, seeking a divorce and other relief. The trial court appointed an appraiser for the purpose of appraising 11 parcels of real estate. The appraiser's final report on the various properties was not delivered to the parties until the Saturday before the start of the trial on Monday. When Husband's counsel objected to the admission of a separate appraisal done by an expert retained by Wife, the trial court ruled that its order appointing an appraiser did not preclude either party from presenting proof from other experts.

On appeal, Husband takes issue with the valuation and division of two of the eleven parcels of real property before the trial court. Wife raises a separate issue regarding certain credit card debt.

## II. *Dellwood Apartment Complex*

Husband had full time employment. In addition, he owns and operates several rental properties. Approximately three weeks before the parties' marriage, Husband purchased an apartment complex at 205 Dellwood Place ("Dellwood") in Chattanooga for $360,000. Dellwood was refinanced in both names after the parties married. The property was extensively renovated beginning just a few days after it was purchased on March 15, 1996. The renovations continued for several months after the parties' marriage.

The parties agreed that Wife would assist Husband in the rental business. Wife set up an office in the parties' home and assisted in managing the properties, including Dellwood. Although she paid the bills, reconciled the bank accounts, and did the bookkeeping, she was only at the properties sporadically. Husband testified that he had a second phone line installed because Wife did not enjoy talking to the tenants. Wife denied that this was the reason for the installation of the second phone line.

The court-appointed appraiser, William S. Latimore, estimated Dellwood's market value to be $412,800. He stated that he was confident of his valuation, but he also testified that he would have had a greater degree of confidence in the valuation had Husband not maintained the data regarding the rental properties as a single entity. Wife's appraiser, Henry Glascock, had appraised Dellwood in July, 1996. At that time, he found the property to be worth $500,000. He testified that, in his expert opinion, he "would not be surprised if the current value would be five hundred thousand." It is interesting to note that Husband had valued Dellwood at $500,000 on a financial statement dated February 10, 1999.

## III. *Marital Residence*

The parties referred to the marital home as Greystone. With respect to this property, Wife contributed $8,440 to the down payment on the lot. While Wife made none of the payments on the home, Husband conceded that she did much of the work on the residence and environs while Husband was working elsewhere. When she left, Wife withdrew $10,000 from a joint checking account, informing Husband that she was taking what she had put toward the purchase of Greystone. Wife valued the home at $300,000, and Latimore valued it at $285,000.

## IV. *Credit Card Debt*

When the parties met, Husband had a number of high-interest rate credit cards. The unpaid balances on these cards escalated after the parties' marriage. In order to address this problem, Wife obtained some low-interest rate cards in her name alone. She then transferred the balances on Husband's cards to her low-interest rate cards, and her cards were then used to finance purchases for the rental business. Husband told Wife that he would pay the balances on her cards, and, at the time of trial, he had been paying on them, albeit generally after the applicable due dates.

## V. *The Trial Court's Findings*

The trial court granted a divorce to the parties. The trial court's finding with respect to Dellwood is as follows:

> [Husband] purchased 205 Dellwood prior to the marriage. However, he refinanced the property and placed it in both names. The Court finds 205 Dellwood is marital property because of the contributions made by both of the parties. The Court finds the current value is $450,000.00. The debt on the property is $357,000.00. The net equity is $93,000.00. The Court further finds [Wife's] contribution is $46,500.00 and awards the property to [Husband] but requires he pay [Wife] $46,500.00 for her interest.

With respect to Greystone, the court stated that

> 9102 Greystone Valley is the marital residence which was purchased during the marriage. Both parties contributed to this property. The equity in the property is $57,000.00 to be divided equally between the parties, each to receive $28,500.00. The property is either to be sold or [Husband] will buy out [Wife's] interest.

The trial court further ordered that Husband pay the credit card debt at issue.

Each of the parties filed a motion to alter or amend the judgment. In response to these motions, the trial court ordered that Husband pay Wife her $46,500 share of Dellwood, as well as her $28,500 share of Greystone, within six months. With respect to the credit card debt, the court ordered "[t]hat [Husband] shall use his best efforts to change the credit cards that he is to pay over into his name and that he is to indemnify and hold [Wife] harmless on those credit card debts and he is to keep those credit card debts promptly paid on time." The court denied Husband's motion to alter or amend in all respects, including his request that the court order the properties be sold and the proceeds divided equally.

Husband now appeals, asserting that the trial court erred in its valuation and division of Dellwood and Greystone and that the trial court erred in denying his post-trial motion to sell the properties and divide the proceeds equally. Wife asserts as an additional issue that "Husband should be required to change the credit cards into his name individually, and hold [Wife] harmless."

## VI. *Standard of Review*

Since this is a non-jury case, our review is *de novo* upon the record of the proceedings below. That record comes to us with a presumption of correctness as to the trial court's factual findings, a presumption that we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d). We review the trial court's conclusions of law *de novo* with no presumption of correctness. ***Adams v. Dean Roofing Co.***, 715 S.W.2d 341, 343 (Tenn. Ct. App. 1986).

## VII. *Discussion*

### A. Dellwood Apartment Complex

With respect to the valuation of Dellwood, Husband argues that the trial court erred in not relying exclusively upon the court-appointed appraiser. He contends that the court should not have considered Glascock's opinion as to the value of this apartment complex. Husband also claims that the trial court erred in failing to account for required closing costs, real estate fees, and back property taxes of $30,673.

The value to be placed on an asset in a divorce case is a question of fact. ***Kinard v. Kinard***, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). In making this determination, the trial court is to consider all relevant evidence, and, if the evidence is conflicting, the court "may assign a value that is within the range of values supported by the evidence." *Id*. An appellate court is to presume a trial court's factual determinations are correct unless the evidence preponderates against them. *Id*. If the evidence preponderates against the trial court's valuation of an asset, it will be set aside, even if the valuation is within the range of proof. ***Loyd v. Loyd***, 860 S.W.2d 409, 411 (Tenn. Ct. App. 1993).

We are of the opinion that the trial court did not err in valuing Dellwood. First, we agree with the trial court that its order appointing an independent appraiser cannot be read to prohibit either of the parties from presenting testimony from other experts. The court-appointed appraiser valued the property at $412,800, but he stated that his valuation was hindered to a degree by Husband's record-keeping. Wife's appraiser had appraised the property four years prior to the trial, at which time he had determined the property's value to be $500,000. He opined that the current value was probably also $500,000. Moreover, Husband himself estimated the value of the property to be $500,000 on a 1999 financial statement.

The trial court had before it the testimony of two experts on the fact question of the valuation of Dellwood. The court below was not required to accept, at face value, the testimony of either expert. ***Airline Constr., Inc. v. Barr***, 807 S.W.2d 247, 264 (Tenn. Ct. App. 1990). In the final

analysis, the credibility of the experts and the weight to be given their testimony were questions for the trier of fact. *See, id*. The proof before the trial court, and now before this Court, including Husband's 1999 financial statement, establishes a range of value of $412,800 to $500,000. The trial court heard all of the evidence on this subject, including testimony regarding the extensive renovations undertaken after Husband purchased the property in March, 1996. The evidence does not preponderate against the trial court's determination that the property is worth $450,000.

Husband next argues that Wife's contributions to Dellwood do not justify the trial court's award to her of fifty percent of the equity in that property. Husband also calls to our attention that the trial court opined that Wife's testimony regarding her contributions was "overstated and not credible."

Courts are directed to divide marital property in accordance with the statutory factors found in T.C.A. § 36-4-121(c) (Supp. 2000). One of these factors is

> [t]he contribution of each party to the acquisition, preservation, [or] appreciation…of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role.

T.C.A. § 36-4-121(c)(5). "[A]n equitable property division is not necessarily an equal one. It is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case." **Batson v. Batson**, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988).

"Generally, the fairness of the property division is judged upon its final results." **Watters v. Watters**, 959 S.W.2d 585, 591 (Tenn. Ct. App. 1997). Appellate courts are to defer to a trial court's division of marital property unless the trial court's decision is inconsistent with the statutory factors or is unsupported by the preponderance of the evidence. **Brown v. Brown**, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

We find that the trial court's division of Dellwood is not inconsistent with the statutory factors or unsupported by the preponderance of the evidence. The property was refinanced in both names after the parties were married. The evidence indicates that Wife participated in the rental business with Husband by paying the bills, reconciling the bank accounts, and doing the bookkeeping. We conclude that the evidence does not preponderate against a finding that Wife made a meaningful contribution to the rental business.

Husband further argues that the trial court's division of Dellwood is inconsistent with its finding that Wife's asserted contributions were overstated and not credible. It is true that the trial court, in its initial judgment, stated the following:

> Whereas, [Wife] claims a substantial role in the appreciation of these properties, the Court does not find her testimony in this regard credible. This is a marriage of short duration and one in which she did work to maintain the home of the parties. However, the Court finds her asserted contributions overstated and not credible.

This statement by the trial court was made following the court's discussion of *all* 11 of the parcels of property at issue before the court. The court awarded all of the properties, save Dellwood and Greystone, exclusively to Husband. Because Dellwood and Greystone were consistently treated differently by the trial court, we are of the opinion that the court's statement quoted above was intended to pertain only to the nine parcels awarded exclusively to Husband.

We find and hold that the trial court did not err when it awarded Wife fifty percent of the equity in Dellwood. Furthermore, considering the overall division of property in this case, we find no error in the fact that the final judgment, in effect, burdens Husband with certain expenses, including property taxes, associated with Dellwood.

### B. Greystone

With respect to Greystone, Husband argues that the trial court erred in valuing Greystone at $300,000. He concedes Wife's substantial contributions to this parcel of property during the parties' marriage.

We find that the trial court did not err either in valuing or dividing the Greystone property. The court-appointed appraiser valued the property at $285,000 and Wife valued the property at $300,000. The trial court found the value to be $300,000 and divided the net equity of $57,000 equally between the parties. Again, this valuation is within the range of the proof and we find that the evidence does not preponderate against it. Furthermore, we find the equal division to be equitable in this case and not to be inconsistent with the statutory factors or contrary to the weight of the evidence. Accordingly, we find no error in the trial court's treatment of Greystone.

### C. Husband's Post-Trial Motion

Husband next argues that the trial court gave no reason for denying his post-trial motion seeking to sell the property and equally divide the proceeds. He contends that this absence of comment means that there is no basis in fact to which we can attach a presumption of correctness on appeal. He asserts that the evidence preponderates against the trial court's denial of his motion.

We find no error in the action of the trial court denying Husband's motion to alter or amend. We note that Husband, in his brief, states that should we grant his request to order a sale, he "would request that he be given first option of matching the buyer, and be allowed a buyout of [Wife's] interest, taking into account all reasonable and necessary closing costs, including the payment of back taxes on Dellwood incurred during the marriage." We are of the opinion that this argument

reveals that Husband is quibbling not with the fact that the trial court refused to order a sale, but rather with the trial court's valuation of the subject properties and the fact that the trial court established Wife's monetary entitlement as a result of that value. We find no error in the fact that the trial court established the values of these two properties based upon the proof before it rather than upon a court-ordered sale. Based on Husband's request that he be permitted to match any offer if a sale would be ordered by the court and the fact that Husband obviously intends to continue in the rental business, we cannot say that the trial court's approach is wrong.

### D. Credit Card Debt

On appeal, Wife asserts that Husband should be required to immediately change the credit cards into his sole name and to hold Wife harmless. She asserts that Husband often pays the bills late, thereby adversely affecting her credit, and she desires to ensure that Husband pay down the balances in a timely fashion.

We note that Husband is correct in stating that the trial court only ordered him to use his best efforts to accomplish this task. We agree; but we also understand Wife's concern that the principal of these debts may never be paid down or that the payment of these debts will extend over a long period of time, in either event, to the detriment of her credit. For this reason, we modify the trial court's judgment so the judgment will provide that Husband will either transfer the credit card balances into his sole name or pay them off completely by no later than December 31, 2001. Without such a modification, there is a real danger that Husband will be able to abuse Wife's credit by slow-paying the credit cards over many years. In our judgment, such a result is not equitable in this case.

### VIII. *Conclusion*

The judgment of the trial court is modified as indicated in this opinion. As modified, the trial court's judgment is affirmed. This case is remanded for the entry of an order consistent with this opinion and for collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant.

_____
CHARLES D. SUSANO, JR., JUDGE