# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### September 8, 2000 Session

## MARY LOUISE GOODMAN CASE v. BILLY RAY CASE

**An Appeal from the Circuit Court for Wilson County**
**No. 1826     Clara W. Byrd, Judge**

---

**No. M2000-00547-COA-R3-CV - Filed June 8, 2001**

---

This is a divorce case. The parties were married for twenty-five years and had no children. The wife was employed full-time and had a pension, and the husband was unemployed and disabled. The trial court granted a divorce to the wife on the grounds of inappropriate marital conduct by the husband, classified and divided the marital property without determining the value of the wife's pension, and made no provision for spousal support for the husband. The husband appeals. We affirm the grant of the divorce to the wife and affirm the decision not to award alimony to the husband. We reverse in part and remand for the trial court to classify the wife's pension plan as marital property, determine its value, and equitably divide it between the parties.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part; and Remanded**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Mary Ann Reese, Nashville, Tennessee, for the appellant, Billy Ray Case.

Richard J. Brodhead, Lebanon, Tennessee, for the appellee, Mary Louise Goodman Case.

## OPINION

In this divorce case, Mary Louise Goodman Case ("Wife") and Billy Ray Case ("Husband") had been married for approximately 25 years, and had no children. On March 5, 1999, Wife filed a petition for divorce, asserting that Husband was guilty of inappropriate marital conduct, an affair with another woman. Wife's petition requested that the trial court issue a temporary injunction prohibiting Husband from harassing or calling Wife at home or at work; the trial court issued a temporary injunction on March 9, 1999. In his response, Husband denied having an affair. Subsequently, Wife admitted in discovery that she had an affair earlier in the marriage. Husband claimed not to have known about Wife's infidelity, and filed a counterclaim for legal separation, alleging that Wife was guilty of inappropriate marital conduct.

Husband also filed a motion for pendente lite support, alleging that he was physically unable to work. Wife was employed full time. Husband requested that the court order Wife to continue making mortgage payments on the marital residence. After a hearing, the trial court found that Husband was "restricted in his job capabilities" and ordered Wife to continue paying the mortgage for the marital residence and to continue Husband's coverage under the medical insurance policy provided by her employer, while the divorce was pending. Husband continued to live in the marital residence, and Wife rented an apartment.

The trial court set the matter for trial on November 9, 1999. On October 22, Husband filed a motion to continue the trial. Husband alleged that, during discovery, Wife had failed to produce any evidence of the value of her pension plan. In an affidavit, Husband's counsel asserted that Wife had stated in interrogatory responses that she had no pension plan. Husband's counsel testified in the affidavit that she contacted Wife's employer for more information, and that eventually the employer promised to forward information about Wife's pension plan to her. Husband's counsel had not received the information. Husband's counsel asserted that a continuance was necessary because an actuary would be needed to determine the present value of Wife's pension plan. The trial court denied Husband's motion, stating that "the present day value of the pension plan would not be helpful to the Court and that the Court will divide pension plans unless one of the parties has dissipated marital assets because of alcohol, drugs, or the like."

The matter was heard as scheduled on November 9, 1999. At trial, the parties stipulated to the division of household furnishings, and stipulated that Husband would keep the marital residence and pay the mortgage on it. Wife's employer failed to appear pursuant to the court's subpoena. Consequently, the trial court allowed counsel to speak with the custodian of records for Wife's employer by telephone. The parties then stipulated that Wife had been employed with The Campbell Group since July 27, 1984, and that she was vested in the company pension plan. The parties agreed that, had the custodian had appeared to testify, she would have stated that she did not know the present value of Wife's pension plan. The parties stipulated that Wife's 401(K) account with the company was worth approximately $2,000.

Husband testified that both he and Wife had worked during the marriage, and that he worked as a bricklayer earning approximately $18,000 per year. However, in February 1995, he fell from a scaffold and broke his neck, leaving him disabled and unable to work. The parties used his worker's compensation settlement to pay down debts, put a down payment on a trailer, and buy personal items. Husband's attempts to return to work failed, and his doctor told him to quit work. He stated that his toes had since begun to curl and he was having difficulty walking. Husband also suffered from a birth defect that made him unable to control his bowels, and he needed constant access to a restroom.

Husband proffered the testimony of Alicia Haile Flood, a paralegal who assisted him with his disability claim. Flood said that Husband's claim was initially denied but had been appealed. The basis of Husband's claim for disability benefits was that he was functionally illiterate, and had a number of physical limitations, including a limited short and long term memory, a need for

constant restroom access, a decreased range of motion in his neck, limited reaching in all directions, limited handling and fingering, postural limitations as to climbing, bending, twisting, stooping, kneeling, crouching, and crawling, exertional limitations as to lifting, sitting, standing, and walking, communication limitations due to a hearing loss in his left ear, and environmental limitations because of respiratory ailments. Flood testified that Husband had a first grade reading and writing ability and a third grade arithmetic ability. She opined that Husband's claim for disability would probably succeed on appeal, but that it would probably be a year before he would receive any benefits.

Wife testified that Husband had a romantic affair with a neighbor, Judy Agee. Wife stated that often, when she came home from work, she would see Husband's car in Agee's driveway. When confronted, Husband explained that his car was at a friend's garage next door to Agee's house. At trial, Husband acknowledged that he had spent a lot of time with Agee, fixing her car, and going out to eat with her. Wife admitted having an affair with another man earlier in the marriage, but said that she and Husband had resolved those issues long ago.

Wife asserted that Husband was abusive. Wife testified that, on one occasion, Husband grabbed her neck and tried to choke her while she was driving them to a lawyer's office to sign a property settlement agreement. Husband admitted to placing his hands on Wife's neck, but he said that he did so only after Wife had cursed at him, elbowed him, and hit him.

Wife testified that her compensation in 1998 was over $45,000. She acknowledged that she had a 401(K) account with her employer worth approximately $2,000.

At the conclusion of the testimony, the trial judge ruled from the bench. The trial court awarded the divorce to Wife on the grounds of Husband's inappropriate marital conduct, and admonished Husband that going to another woman's house on a regular basis without his wife, for whatever reason, was inappropriate. The trial court awarded the marital residence to Husband, and ordered him to pay the mortgage. Since Wife's name was still on the mortgage, if Husband became thirty days delinquent, the property would be sold. The trial court stated that if Husband received a lump sum settlement from Social Security for retroactive disability payments, he was required to refinance the property in his own name. Wife's 401(K) account was divided equally, but Husband's share was awarded to Wife to compensate for her moving expenses. The trial judge stated that "[t]he Court finds that Mr. Case is disabled and entitled to benefits so that no alimony is awarded." A written order was entered to this effect. Husband later filed a motion to alter or amend. The trial court did not alter its order, but explained that the value of Wife's pension plan was dependent on her living long enough to receive the benefits, and therefore, "Wife's pension plan and Husband's claim for [disability] are both speculative and divided equally." From this order, Husband now appeals.

On appeal, Husband argues that the trial court should have granted him a legal separation based on Wife's previous adulterous affair. Husband also argues that the trial court erred in the

classification and division of the parties' assets, and in its failure to award Husband any spousal support.

We first address Husband's argument that the trial court should have granted him a legal separation instead of granting a divorce to Wife. The parties offered conflicting testimony regarding their extramarital relationships and Husband's abusive behavior. Wife testified that Husband had a relationship with Agee, which Husband denied. Wife admitted having an affair, but asserted that it was early in the marriage and that the parties had resolved the issues surrounding her affair. Wife testified about Husband's abusive behavior, and Husband testified that he did not abuse Wife. The trial court was in the best position to determine the credibility of the witnesses, and the trial court's determinations of credibility are entitled to great weight on appeal. *See Gaskill v. Gaskill*, 936 S.W.2d 626, 633 (Tenn. Ct. App. 1996). The trial court's award of the divorce to Wife was based on its determination of the parties' credibility. Giving appropriate deference to the trial court's assessment of credibility, the evidence does not preponderate against the trial court's decision. The trial court is affirmed on this issue.

Next, Husband argues that the trial court erred in the classification and division of assets. Where the division of property is at issue, the trial court should first classify the property as either marital or separate, and then make an equitable division of the marital property. *See Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). The trial court's classification and division of property is reviewed *de novo* with a presumption that the trial court's factual findings are correct. *See Watters v. Watters*, 959 S.W.2d 585, 588 (Tenn. Ct. App. 1997). An appellate court may alter the trial court's division of property only if the trial court misapplies the law of if the evidence preponderates against the trial court's factual findings. *See Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. Ct. App. 1994).

The classification of property as either marital or separate is governed by Tennessee Code Annotated § 36-4-121(b). Section 36-4-121(b)(1)(B) states:

> "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation and the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage.[1]

Tenn. Code Ann. § 36-4-121(b)(1)(B) (1996).

In this case, there was no evidence presented to the trial court regarding the value of Wife's pension plan. The trial court simply stated that the value of Wife's interest in her pension plan was

---

[1]Section 36-4-121(b)(1)(B) was amended while this appeal was pending. *See* 2000 Tenn. Pub. Acts 713. The language above is the statutory language in effect at the time of divorce.

-4-

"speculative." Under Tennessee Code Annotated § 36-4-121(b)(1)(B), marital property includes "the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage." It is undisputed that Wife was vested in her employer's pension plan, and that the value of the pension plan accrued during the parties' marriage. Husband sought a continuance of the trial to present evidence on the value of the plan. Under these circumstances, the trial court's decision must be reversed, and the cause remanded to determine the value of Wife's pension. Once determined, the property should be equitably divided between the parties without regard to fault. *See* Tenn. Code Ann. § 36-4-121(a)(1); *King v. King*, 986 S.W.2d 216, 218 (Tenn. Ct. App. 1998). Other than Wife's pension plan, the trial court's classification and division of the parties' remaining assets and debts is affirmed.

Finally, Husband argues that the trial court erred by failing to award him alimony. The trial court has broad discretion in deciding whether to award alimony. *See Watters*, 959 S.W.2d at 593. In deciding whether to award alimony, the trial court can consider the parties' relative fault. *See* Tenn. Code Ann. § 36-5-101(d)(1)(K) (Supp. 2000); *Watters*, 959 S.W.2d at 593. In this case, the trial court considered Husband's fault, as well as the likelihood that Husband would receive disability benefits. Under all of these circumstances, we find no abuse of discretion in the trial court's decision that Husband was not entitled to alimony. The decision of the trial court is affirmed on this issue.

In sum, we affirm the decision of the trial court granting the divorce to Wife, as well as the decision not to award Husband alimony. We reverse in part because the trial court failed to classify Wife's pension plan as marital property, and remand for a determination of the value of Wife's pension plan and for equitable division of the plan. The remainder of the division of property and debts is affirmed.

The decision of the trial court is affirmed in part, reversed in part, and remanded as set forth above. Costs of this appeal are taxed equally to the appellant, Billy Ray Case, and his surety, and the appellee, Mary Louise Goodman Case, and her surety, for which execution may issue if necessary.

_____

HOLLY KIRBY LILLARD, JUDGE
