# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
February 4, 2014 Session

## TERESA LEE WALKER v. LARRY ALAN WALKER

**Appeal from the Family Court for Rhea County**
No. 26279    Hon. James W. McKenzie, Judge

---

**No. E2013-01698-COA-R3-CV-FILED-APRIL 16, 2014**

---

This post-divorce appeal concerns the equitable division of property between the Parties. Following the grant of the request for divorce, the trial court credited Husband for separate property he contributed to the marital residence to equalize the overall division of the property. Wife appeals. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Family Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and THOMAS R. FRIERSON, II, J., joined.

Samuel A. Byrd and Clancy J. Covert, Chattanooga, Tennessee, for the appellant, Teresa Lee Walker.

James S. Smith, Jr., Rockwood, Tennessee, for the appellee, Larry Alan Walker.

## OPINION

## I. BACKGROUND

Teresa Lee Walker ("Wife") married Larry Alan Walker ("Husband") in 1992. The parties were married later in life and each had their own children prior to the marriage. There were no children born of the marriage between Husband and Wife (collectively "the Parties"). Husband worked throughout the marriage, with the exception of a one-year period from 1994 to 1995 when he was unemployed. Husband eventually retired in 2006. Wife also worked throughout the marriage until her health deteriorated in 2008.

The issues in this appeal pertain to Husband's premarital purchase of a house ("the Lake House") in Spring City, Tennessee in 1988. Husband made a $36,000 down payment and financed the remainder of the Lake House. Approximately one year after the marriage, Husband fulfilled the mortgage obligation on the Lake House with $23,000 he received as a lump-sum retirement payment from his employment at the University of Missouri. The Parties initiated a second mortgage on the Lake House, and payments were made on the second mortgage throughout the marriage. Husband subsequently applied approximately $22,150 he received as inheritance from his mother to fulfill the second mortgage obligation. In 2004, the parties initiated a third mortgage on the Lake House to fund the purchase and renovation of a second home ("the Wolf Creek House"). The parties sold the Lake House, used half of the proceeds to fulfill the mortgage obligation on the Wolf Creek House, and transferred the remaining proceeds to Husband's retirement account. At some point, the third mortgage on the Lake House was fulfilled.

On July 24, 2008, Wife filed a complaint for legal separation, alleging inappropriate marital conduct. The parties attempted to reconcile but were unsuccessful, causing Wife to file a motion to reinstate the divorce proceedings. The court revoked the reconciliation order, and the parties stipulated the grounds supporting the request for divorce. The case proceeded to trial on the issue of the classification and division of property.

Wife testified that she first met Husband in Baton Rouge, Louisiana. Husband was working at a nuclear plant, while she was working for Ethyl Corporation. She eventually obtained employment at Husband's nuclear plant and established a residence with Husband in late 1986, approximately six years before they were legally married. She claimed that her relationship with Husband began to deteriorate when he reached retirement age and "started trying to run [her] off" because she needed financial assistance. She stated that she was unable to maintain her work schedule because her health had declined. She asserted that Husband impeded her access to marital funds and that he refused to pay her hospital bills, totaling approximately $75,000. She stated that he refused to provide her with health insurance even though he always maintained coverage for himself. She asserted that Husband began draining his annuities, investment accounts, and an insurance policy when she filed for separation. She conceded that she had applied for a credit card using Husband's social security number and that she pawned several of their belongings to pay for necessities.

Wife acknowledged that she did not have property or significant assets when she married Husband and that he purchased the Lake House prior to the marriage. She conceded that she and Husband maintained separate checking accounts, that she generally provided for her needs, and that Husband paid the mortgage. She noted that she was living with Husband when the Lake House was purchased. She recalled that the Lake House was mortgaged several times throughout the marriage and that she was listed on the trust deed for the second

mortgage. She recalled that she and Husband purchased the Wolf Creek House in 2004 with funds from the Lake House. She also testified extensively concerning Husband's various collectible items that were valued and divided pursuant to the court's order.

Husband testified extensively concerning his educational history and employment. He recalled a long career with the Navy that allowed him to gain a valuable technical education in the Navy's nuclear power program. In 1965, he left the Navy and began working for the University of Missouri. After approximately fourteen years, he then completed a series of contract positions before he began a printer repair company that was successful for approximately 12 years. He acknowledged that he attempted to start another business venture, which was not as successful as his printer repair company.

Relative to Wife, Husband claimed that Wife never showed him her hospital bills and that he had diligently paid the bills he was provided. He testified that he purchased the Lake House in 1988 and ultimately fulfilled the first mortgage obligation in 1993. He related that he contributed $81,150 of what he considered separate property to the Lake House. He stated that his contribution consisted of his initial $36,000 down payment, a $23,000 lump-sum payment from one of his retirement accounts, and a $22,150 payment that he received as inheritance from his mother. He stated that he netted approximately $300,000 from the sale of the Lake House. He asserted that he used $150,000 to pay the mortgage on the Wolf Creek House and that he transferred the remaining $150,000 to one of his retirement accounts.

Following the presentation of the above evidence, the trial court granted the request for divorce. As relevant to this case, the court adopted the Parties' valuations of the property at issue and divided the marital property, allocating an additional $81,150 in marital property to Husband in recognition of his contribution of separate property to the marriage. Wife filed a motion to alter or amend the court's judgment, arguing, in pertinent part, that the court erred in allocating an additional $81,150 in marital property to Husband because his contribution of allegedly separate property had been transmuted into marital property. Wife also specifically asserted that the trial court erred in crediting Husband for the $22,150 inheritance he received from his mother. She claimed that $7,000 of the inheritance was marital property because it was payment for services rendered during the marriage and that the remainder was transmuted into marital property as evidenced by Husband's use of the funds to fulfill a marital debt. This timely appeal followed the trial court's denial of Wife's post-trial motion.

## II. ISSUE

We consolidate and restate the issues raised on appeal by Wife as follows:

Whether the trial court erred in dividing the property between the Parties.

## III. STANDARD OF REVIEW

On appeal, the factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Mixed questions of law and fact are reviewed de novo with no presumption of correctness; however, appellate courts have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

The trial court's division of property is reviewed de novo with a presumption that the trial court's factual findings are correct. *See Watters v. Watters*, 959 S.W.2d 585, 588 (Tenn. Ct. App. 1997). Absent an error of law, the court's division of property will be reversed or modified only if the evidence preponderates against the court's decision. *Id.* The trial court has wide discretion in dividing property. *Dunlap v. Dunlap*, 996 S.W.2d 803, 814 (Tenn. Ct. App. 1998). This court must give great weight to the trial court's decisions in dividing marital assets, and "'we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures.'" *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007) (quoting *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996)).

## IV. DISCUSSION

Wife argues that the trial court erred in crediting Husband for the alleged $36,000 down payment on the Lake House when the record clearly reflects that the down payment was only $30,200. She also claims that the trial court erred in crediting Husband for $22,150 in separate property when the funds were used to pay a marital debt. Husband responds that he provided a $36,000 down payment but that the record simply fails to account for the money he contributed to closing costs. He argues that if this issue had been raised at trial, he would have submitted documentation to prove that fact. He asserts that the money he contributed to the marital residence was not transmuted into marital property because he and

-4-

Wife clearly kept their finances and assets separate. He claims that if any error occurred, the trial court was simply too conservative in setting the amount of his separate property.

Relative to the alleged clerical error in calculating Husband's initial down payment on the Lake House, Wife failed to raise this issue at trial. Indeed, the record reflects that at trial, the Parties agreed that Husband made a $36,000 down payment on the Lake House. A party may not offer a new issue for the first time on appeal. *See Lane v. Becker*, 334 S.W.3d 756, 764 (Tenn. Ct. App. 2010) (citing *Campbell Cnty. Bd. of Educ. v. Brownlee-Kesterson, Inc.*, 677 S.W.2d 457, 466-67 (Tenn. Ct. App. 1984)). "The jurisprudential restriction against permitting parties to raise issues on appeal that were not first raised in the trial court is premised on the doctrine of waiver." *Fayne v. Vincent*, 301 S.W.3d 162, 171 (Tenn. 2009) (citations omitted). If Wife had raised the issue, the trial court could have addressed the issue and provided a record for this court's review. Accordingly, this issue is waived.

Relative to the inheritance Husband received from his mother, separate property is defined, in pertinent part, as "[p]roperty acquired by a spouse at any time by gift, bequest, devise or descent." Tenn. Code Ann. § 36-4-121(b)(2). However, "[t]he doctrines of transmutation and commingling provide an avenue where separate property can become marital property" based upon "the parties' treatment of the separate property." *Eldridge v. Eldridge*, 137 S.W.3d 1, 13 (Tenn. Ct. App. 2002). Despite this fact,

> [P]roperty once owned by a spouse, either as separate property or marital property, but not owned by either spouse at the time of the divorce, is not subject to classification and division or distribution when the divorce is pronounced. This is because, generally speaking, a court cannot divide and/or distribute what is "not there" – property no longer owned by the parties, individually or jointly, at the time of the divorce.

*Brock v. Brock*, 941 S.W.2d 896, 900 (Tenn. Ct. App 1996) (footnote omitted).

In this case, the inheritance Husband received from his mother was no longer in existence at the time of the divorce. In such cases, the trial court may consider the use of separate property for the benefit of the marriage when equitably dividing the present marital property. *Id.* The Tennessee Code outlines the relevant factors that a court must consider when equitably dividing marital property without regard to fault on the part of either party. Tenn. Code Ann. § 36-4-121(a)(1), (c). An equitable division of marital property is not necessarily an equal division, and section 36-4-121(a)(1) only requires an equitable division. *See Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002). In consideration of the relevant factors and the trial court's discretion in such matters, we conclude that the division of the marital property was equitable and affirm the court's decision.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Teresa Lee Walker.

_____
JOHN W. McCLARTY, JUDGE