IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 25, 2010 Session

**HAROLD LEE  HARDEN v. JUDY KAY HARDEN**

**Direct Appeal from the General Sessions Court for Wilson County**
**No. 2008-DV-50     John Thomas Gwin, Judge**

———————————

**No. M2009-01302-COA-R3-CV - Filed June 30, 2010**

———————————

This is a divorce action.  Husband/Appellant appeals from the trial court's division of marital assets, award of attorneys fees to the Wife, and the stay of the proceedings during the pendency of the appeal.  Affirmed as modified.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the General Sessions Court Affirmed as Modified**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Kimberly L. Reed-Bracey, Goodlettsville, Tennessee, for the appellant, Harold Lee Harden.

John L. Meadows, Lebanon, Tennessee, for the appellee, Judy Kay Harden.

**OPINION**

This is a highly acrimonious divorce action, resulting in numerous motions and petitions before the trial court.  On December 8, 2008, after approximately two years of marriage, Appellant Harold Lee Harden ("Mr. Harden") filed a complaint for divorce against Appellee Judy Kay Harden ("Mrs. Harden").  The parties married on January 17, 2007.[1]  At the time of the filing of the complaint, Mr. Harden was sixty-one years old and Mrs. Harden was sixty-eight years old.  Mr. Harden alleged grounds of inappropriate marital conduct and irreconcilable differences.

Mrs. Harden filed an answer and a counter-complaint for divorce on January 8, 2009.

---

[1]Mr. Harden's complaint lists the date of marriage as January 17, 2006.  However, it appears that this was error based upon the findings of the trial court and the remainder of the record.

In her counter-complaint Mrs. Harden denied inappropriate marital conduct on her part, but admitted that the parties had irreconcilable differences.

The record is replete with instances of the parties coming to the trial court with disputes over personal property. Mr. Harden filed a motion on December 12, 2008 seeking an order which would allow him to enter the martial home to retrieve personal property and asked the court to equitably divide the parties' joint bank account. Mr. Harden asserted that Mrs. Harden had obtained an Order of Protection[2] against him which prohibited him from coming about the marital residence. The trial court entered an order on December 30, 2008 granting Mr. Harden temporary possession of his tools, separate property, paperwork and personal property. The order also named two persons to supervise the transfer of the property and a date for the property to be transferred.

On February 10, 2008, Mr. Harden filed another motion to retrieve his personal property. Again Mr. Harden asserted that he had items of personal property in the marital home and that Mrs. Harden was refusing to give him his property. Mrs. Harden filed a response on February 19, 2009 asserting that she did not have possession of many of the items requested and that she purchased the items that were in her possession.

The trial court ordered the parties to attend mediation on March 12, 2009. Also on this day, the trial court appointed a special master to inventory the parties' personal property. Mediation was unsuccessful. The record contains a fee application from the special master, which states that he conducted an inventory. However, from our review of the record, we cannot find a copy of the special master's inventory.[3]

The trial court entered an order on March 25, 2009 finding that Mr. Harden had violated the Order of Protection on twelve separate instances.[4] The trial court further found that on at least seven of the instances, Mr. Harden had reason to believe he could communicate with Mrs. Harden. The trial court then sentenced Mr. Harden to ten days of incarceration, but suspended all ten days as long as no further violations occurred.

---

[2]The record does not contain a copy of the Order of Protection.

[3]There is an exhibit missing from the record which was retained by the General Sessions Court Clerk due to size. The record indicates that the retained exhibit was Mr. Harden's black photo album. The testimony at trial indicates that the photos were from the parties' home, showing the personal property inside the home. There is no indication in the record that this photo album is in the special master's inventory.

[4]This order states that it was heard on March 12, 2009 based upon Mrs. Harden's Petition for Contempt. A copy of the petition does not appear in the record.

A trial was conducted on April 13-14, 2009 and April 20, 2009. On May 21, 2009, the trial court entered a Final Decree. The trial court granted Mrs. Harden a divorce based upon the inappropriate marital conduct of Mr. Harden. The trial court found that the parties had a short marriage, barely two years in length. According to the Final Decree, the trial court found that Mr. Harden was in good physical and mental health and he was currently employed. However, the trial court found that Mr. Harden was underemployed. As to Mrs. Harden, the trial court found that she is in poor physical and mental health, and had been unemployed many years prior to the marriage and throughout the marriage. Specifically, the trial court noted that Mrs. Harden had no work history outside the home. The trial court found that Mr. Harden had acquired tools and assets to construct a "kit-car" during the marriage. As to Mrs. Harden's earning capacity, the trial court found that she "has no ability for future acquisition of capital assets, and her only foreseeable income will be the continuation of Social Security benefits from her deceased former spouse, currently some $1,200.00 per month." As to Mr. Harden, the trial court found that he was currently employed and "enjoys a significantly higher ability for future acquisition of capital assets and income." In support of this finding, the trial court noted that in addition to his employment, Mr. Harden has a pre-marital history of providing automobile repair work out of his home and could complete his "kit-car," which upon completion would be worth $50,000 to $60,000. Further, the trial court found that Mrs. Harden relied on her husband's income representations in loaning him money which was never repaid. The trial court found that the parties separate bank accounts transmuted during the marriage based on the intent of the parties and became marital property. Moreover, the trial court found that both parties contributed to significant dissipation of assets during the marriage, as tens of thousands of dollars were spent gambling. The trial court specifically found that the dissipation through gambling was a "joint and equal effort between Husband and Wife."

The trial court also divided property in the Final Decree. The trial court found that Mrs. Harden's separate property consisted of furniture which existed prior to marriage. The trial court stated that Mrs. Harden's grandmother's clock, which she owned prior to marriage, did not have a significant value. The trial court found that Mr. Harden's separate property consisted of "unwritten, unrecorded lease purchase agreements for the sale of two lake properties," which the trial court valued at $41,460.00, receivable at the rate of $615.00 per month. Also, Mr. Harden's separate property consisted of tools and a lawnmower inherited from his father.

The trial court made specific findings regarding the parties' premarital financial status. The trial court found that Mrs. Harden, at the time of marriage, "owned a home and an automobile free of encumbrances; had significant furniture and furnishings; a bank account containing approximately $78,000; and no consumer debt. The trial court found that Mr. Harden's pre-marital status was vastly different. It found that Mr. Harden owned a "'lake

house' of significantly lesser value, which was encumbered to the extent of approximately $40,000; a vehicle upon which there was a lien; furniture and furnishings of lesser value than those of wife; tools and equipment, including those received from his Father; and an equitable interest in two other lake properties" previously mentioned. The trial court also found that at the time of marriage, Mr. Harden owed certain consumer credit accounts and back taxes to the IRS. The trial court found that Mr. Harden received an inheritance from his father, during the marriage, which included $92,000 in cash. The trial court found that this was converted to marital property based upon Mr. Harden's actions.

The trial court made specific findings regarding a pre-marital loan made to Mr. Harden by Mrs. Harden. Specifically, the trial court found that Mrs. Harden loaned her husband money prior to the marriage, to improve his property and to purchase a truck. Further, the trial court found that both parties intended that this money be a loan, subject to repayment. As proof of this, the trial court found that the parties had executed an IOU. The trial court found that Mrs. Harden loaned Mr. Harden no less than $50,000 for the improvement of his property, which was later sold. The trial court also found that Mr. Harden promised to complete the "kit-car" to offset separate funds expended by Mrs. Harden, but had failed to do so. The trial court found that the parties had sold and replaced some furniture and furnishings during the marriage. It also found that there was insufficient proof to determine the amount of cash received by the parties from "garage sales" as well as the subsequent disposition of the cash.

The trial court then divided the parties' property. The trial court noted that it gave values to the property where possible. The trial court awarded Mrs. Harden her separate assets including: premarital furniture, furnishings and decorations (no value given); her premarital grandfather clock; and premarital automobile. The trial court awarded Mr. Harden his separate assets which included: the receivables from his property-valued at $41,460; his father's lawnmower; the Tom Tom; a diamond pendant necklace; his father's shotgun, the pressure washer, all of the spray equipment, his stereo system and a car dolly. The trial court noted that the parties did not attempt to value all of Mr. Harden's tools, but that he is receiving all the tools necessary to complete the "kit-car." The trial court found that the marital property consisted of:

> the home place at 624 Crowell Lane, Lebanon, TN, valued at $241,000.00; the replacement furniture and furnishings, no current market value given (only some evidence of purchase prices, but not current value); the 2000 Chevrolet Silverado pickup truck valued at $6,475.00 (which Husband initially purchased with funds borrowed from Wife, but which Husband later gifted to Wife as joint property); the marital tools valued in

total at $1,440.00; the marital work trailer which the Court values at $1,500.00, and the remaining cash in the bank accounts.

The trial court then divided the marital property. Mr. Harden was awarded all of the marital tools, except for yard tools. He was also awarded the air compressors- valued at $890.00 and $175.00 by the trial court, the digital camera-valued at $126.00 by the trial court, the printer/fax machine-valued at $152.00 by the trial court, the computer- valued at $300.00 by the trial court, the wireless internet equipment, the trim saw and stand-valued at $375.00 by the trial court, and his recliner – valued at $400.00 by the trial court. The trial court also awarded Mr. Harden one bedroom suite from the marital residence of Mrs. Harden's choice. Mr. Harden was also awarded the remnants of the Camaro automobiles – valued at $1,500 by the trial court, the "kit car" – valued at $5,000 by the trial court, the 2000 Chevrolet truck- valued at $6,475.00 by the trial court, and the work trailer – valued at $1,500 by the trial court. The trial court awarded Mrs. Harden the remainder of the marital property not awarded to the Husband, noting that there was no evidence at trial as to the value of these items, and also awarded her the remaining cash and bank accounts. As to the marital home, the trial court found that it should be equitably divided, and awarded Mr. Harden thirty percent of its value and Mrs. Harden seventy percent based on the statutory factors. The trial court also ordered that from his share of the marital home, Mr. Harden would pay Mrs. Harden $50,000 representing the money loaned by Mrs. Harden for improvements to Mr. Harden's property and also $17,150 for Mrs. Harden's attorney's fees. The trial court ordered that Mrs. Harden shall retain the marital home and pay Mr. Harden $4,850.00 within sixty days, representing the remainder of Mr. Harden's share after the court ordered deductions.

As stated above, the trial court awarded Mrs. Harden her attorney fees. Specifically, in the Final Decree, the trial court stated that it found that Mrs. Harden was "unable to pay her own attorney fees without liquidating her homeplace; and further, that [Mrs. Harden] is unable to do so and obtain suitable replacement housing." Accordingly, the trial court awarded Mrs. Harden $17,150.00 in attorney fees.

On May 22, 2009, Mr. Harden filed a motion requesting the trial court to stay the sale of the marital home pending an appeal. That same day, Mr. Harden filed another motion to retrieve personal property requesting a court order allowing him to enter the marital home to retrieve the personal property awarded to him in the Final Decree. This order also requested that the trial court modify the Final Decree and pointed to evidence which Mr. Harden submitted the trial court overlooked.

Mrs. Harden filed a response on May 28, 2009, as well as her own motion to alter or

amend.  As for her motion to alter or amend, Mrs. Harden requested a specific finding that Mr. Harden had been untruthful during the trial.

The trial court entered an order on June 11, 2009, amending the Final Decree.  The trial court amended the Final Decree to note that Mrs. Harden's bank account at the time of marriage contained $23,284.22 changing the previously found value of $78,000.  The trial court also stayed the sale of the marital home for thirty days.  The trial court denied Mr. Harden's motion to retrieve his personal property, stating that if Mr. Harden does not file an appeal in thirty days, the trial court will address the personal property then.  The order also reflects that Mrs. Harden's motion to alter or amend was denied.  Mr. Harden filed a notice of appeal on June 18, 2009.

Although a notice of appeal was filed by Mr. Harden, litigation continued in the trial court.  The following motions are contained in the appellate record even though all were filed and heard subsequent to the filing of the notice of appeal.  On June 29, 2009 Mr. Harden filed another motion to stay the sale of the marital home and to retrieve personal property.  Mr. Harden requested again that the trial court stay the sale of the marital home pending the appeal.  Mr. Harden also again requested an order allowing him to retrieve the personal property items awarded to him in the Final Decree from the marital home.

The trial court heard arguments on Mr. Harden's motion on July 9, 2009 and entered an order on July 20, 2009.  Pursuant to this order, Mr. Harden was granted permission to retrieve his personal property from the marital residence.  The court ordered that the sheriff's department accompany Mr. Harden and that he retrieve all of the property in one trip.  The court further ordered that it would set a time for the transfer of the property.  The trial court also granted Mr. Harden's motion to stay the sale of the marital home.  Another order was entered on July 23, 2009, providing that Mr. Harden shall retrieve his property on July 25, 2009 beginning at 9:00 a.m. and continuing until all of his property is removed from the marital residence.

Also subsequent to the notice of appeal, on September 11, 2009, Mr. Harden filed a motion to compel Mrs. Harden to deliver his personal property and to be held in contempt.  Mr. Harden submitted that numerous items to which he was entitled were withheld from him by Mrs. Harden.  Mr. Harden also submitted that some of the items he did receive were "willfully and intentionally" damaged by Mrs. Harden.  Mr. Harden sought damages for the damaged and missing property, and requested that Mrs. Harden be held in contempt of court.  The trial court heard arguments on this motion on October 1, 2009.  On October 8, 2009, the trial court entered an order stating that it would not consider the motion as it is not a "sworn petition" as required.  The trial court stated that it would consider the issue later if a proper and timely petition for relief was filed.  Subsequently, Mr. Harden filed a petition and motion

to compel Mrs. Harden to deliver his personal property and to be held in contempt on October 9, 2009. On October 23, 2009, Mr. Harden filed a sworn amended petition. On December 7, 2009, the trial court entered an order staying all further proceedings. On December 9, 2009, an Agreed Order was entered staying all pending matters. There does not appear to be any difference between the December 7, 2009 Order and the December 9, 2009 Order; nor is it apparent from the record why both orders were entered.

Mr. Harden raises six issues for our review, as stated in his brief:

1. Did the trial court err in awarding wife 81% of the marital estate and the Husband a mere 8-15%?
2. Did the trial court err in failing to value the items that the trial court concluded were marital?
3. Did the trial court err in denying the Husband 50% of the marital estate?
4. Did the trial court err in denying Husband 50% of the marital home upon sale?
5. Did the trial court err in repeatedly denying Husband's request for his personalty both before, during and after the entry of the Final Decree?
6. Did the trial court err in the award of Wife's attorney fee?

On appeal, Mrs. Harden requests that this Court modify the trial court's division of the marital home. Mrs. Harden asserts that the division should be modified so that she is not required to pay any additional money to Mr. Harden. Additionally, Mrs. Harden requests attorney fees for this appeal.

**Property Division**

The division of marital property, including its classification and valuation are findings of fact. ***Woodword v. Woodword,*** 240 SW3d 825, 828 (Tenn. Ct. App. 2007). Trial courts have "wide latitude in fashioning an equitable division of marital property." ***Altman v. Altman***, 181 S.W.3d 676, 683 (Tenn. Ct. App. 2005). Accordingly, the trial court's decisions regarding classification, valuation and division of property are reviewed *de novo* with a presumption of correctness unless the evidence preponderates otherwise. ***Farrar v. Farrar***, 553 S.W.2d 741, 743 (Tenn. 1977).

When making its division of property, the trial court must first classify the property.

Tennessee recognizes two distinct types or classes of property: "marital property" and "separate property." The distinction is important because Tenn. Code Ann 36-4-121(a) "provides only for the division of marital property." *See also* **Batson v. Batson**, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). Tenn. Code. Ann § 36-5-121(b)(1)(B) provides that any increase in value to separate property may be considered marital property if each party contributed to its preservation and appreciation. In marriages of short duration, like this one, the trial court should divide the property so as to place the parties in a position as close as possible to where they would have been had the marriage never taken place. *Id.* at 859.

Dividing a marital estate is not a mechanical process; the goal is to fashion an equitable remedy considering the non-exclusive factors set forth in Tenn. Code. Ann § 36-4-121(c):

1. The duration of the marriage;
2. The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
3. The tangible or intangible contributions by one party to the education, training or increased earning power of the other party;
4. The relative ability of each party for future acquisition of capital assets and income;
5. The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled his role;
6. The value of the separate property of each party;
7. The estate of each party at the time of the marriage;
8. The economic circumstances of each party at the time of the marriage;
9. The tax consequences to each party associated with the reasonably foreseeable sale of the asset and other reasonably foreseeable expenses associated with the asset;
10. The amount of social security benefits available to each spouse;
11. And such other factors as are necessary to consider the

equities between the parties.

The division of marital property is rooted in equity, and a division of marital property is not rendered inequitable merely because it is not precisely equal, ***Cohen v. Cohen***, 937 S.W.2d 823, 832 (Tenn. 1996); ***Ellis v. Ellis***, 748 S.W.2d 424, 427 (Tenn. 1988) or because each party does not receive a share or portion of each marital asset. ***Cohen***, 937 S.W.2d at 833 (citing ***Brown v. Brown***, 913 S.W2d 163, 168 (Tenn. Ct. App. 1994)).

Before we discuss the merit of Mr. Harden's argument, we must first discuss Mr. Harden's failure to comply with the rules of this court. The Rules of the Court of Appeals provide, in pertinent part:

> **Rule 7. Briefs in Domestic Relations Cases.**
>
> (a) In any domestic relations appeal in which either party takes issue with the classification of property or debt or with the manner in which the trial court divided or allocated the marital property or debt, the brief of the party raising the issue shall contain, in the statement of facts or in an appendix, a table in a form substantially similar to the form attached hereto. This table shall list all property and debts considered by the trial court, including: (1) all separate property, (2) all marital property, and (3) all separate and marital debts.
>
> (b) Each entry in the table must include a citation to the record where each party's evidence regarding the classification or valuation of the property or debt can be found and a citation to the record where the trial court' decision regarding the classification, valuation, division, or allocation of the property or debt can be found.
>
> (c) If counsel disagrees with any entry in the opposing counsel's table, counsel must include in his or her brief, or in a reply brief if the issue was raised by opposing counsel after counsel filed his or her initial brief, a similar table containing counsel's version of the facts.

Rule 7 even includes an example of what is required. A proper Rule 7 table would look similar to the this:

**Separate Property**

| Property | Appellant's Value | Appellee's Value | Value Found by the Trial Court | Party To Whom Property Awarded |
|---|---|---|---|---|
| 1. Description | $<br><br>(citation to the record) | $<br><br>(citation to the record) | $<br><br>(citation to the record) | Husband or Wife<br><br>(citation to the record) |

**Marital Property**

| Property | Appellant's Value | Appellee's Value | Value Found by the Trial Court | Party To Whom Property Awarded |
|---|---|---|---|---|
| 1. Description | $<br><br>(citation to the record) | $<br><br>(citation to the record) | $<br><br>(citation to the record) | Husband or Wife<br><br>(citation to the record) |

**Debt**

| Property | Appellant's Value | Appellee's Value | Value Found by the Trial Court | Party To Whom Property Awarded |
|---|---|---|---|---|
| 1. Description | $<br><br>(citation to the record) | $<br><br>(citation to the record) | $<br><br>(citation to the record) | Husband or Wife<br><br>(citation to the record) |
| Total Separate Property awarded to Husband as valued by: | | | Husband: $<br><br>Wife: $<br><br>Trial Court: $ | |
| Total Marital Property Awarded to Husband as valued by: | | | Husband: $<br><br>Wife: $<br><br>Trial Court: $ | |
| Total Debt allocated to Husband as valued by: | | | Husband: $<br><br>Wife: $<br><br>Trial Court: $ | |

| Total Separate Property awarded to Wife as valued by: | Husband: $ |
| | Wife: $ |
| | Trial Court: $ |
| Total Marital Property Awarded to Wife as valued by: | Husband: $ |
| | Wife: $ |
| | Trial Court: $ |
| Total Debt Allocated to Wife as valued by | Husband: $ |
| | Wife: $ |
| | Trial Court: $ |

This Court has previously held "'where an appellant fails to comply with this rule, that appellant waives all such issues relating to the rule's requirements.'" **Slaughter v. Slaughter**, No. W2007-01488-COA-R3-CV, 2008 WL 1970491, at *2 (Tenn. Ct. App. May 8, 2008)(quoting **Stock v. Stock**, No. W2005-02634-COA-R3-CV, 206 WL 3804420, at *5, n.3 (Tenn. Ct. App. 2006)(quoting **Howell v. Howell**, No. W2001-01167-COA-R3-CV, 2002 WL 1905307, at *4 (Tenn. Ct. App. 2002)(citing **Bean v. Bean,** 40 S.W.3d 52 (Tenn. Ct. App. 2000)). "This Court is under no duty to search a trial court record in order to discern the valuation of the couple's property." **Slaughter,** 2008 WL 1970491 at *2 (citations omitted). This Court has previously found issues involving the valuation and division of property waived for failure to comply with Rule 7. *See e.g.* **Slaughter v. Slaughter**, No. W2007-01488-COA-R3-CV, 2008 WL 1970491 (Tenn. Ct. App. May 8, 2008)*; Bean v. Bean*, 40 S.W.3d 52 (Tenn. Ct. App. 2000); **Durant v. Durant**, No. M2001-00691-COA-R3-CV, 2002 WL 772923 (Tenn. Ct. App. April 30, 2002).

Valuation and division of property are perhaps two of the most complicated decisions a trial court must make in a divorce proceeding. Often when these issues are appealed, the record consists of volumes of trial transcripts and exhibits. Therefore, it is essential that the parties comply with Rule 7 in order to aid this Court in reviewing the trial court's decision. The table required by Rule 7, allows this Court to easily and correctly determine the valuation and distribution of the marital estate as ordered by the trial court. Further, the Rule 7 table, allows this Court to ascertain the contentions of each party as to the correct valuations and proper distribution, as well as the evidence in the record which the party believes supports its contention. Consequently, a table, in full compliance with Rule 7, is vital as this Court must consider the *entire* distribution of property in order to determine whether the trial court erred. **Watters v. Watters**, 959 S.W.2d 585, 591 (Tenn. Ct. App. 1997). Moreover, this Court is under no duty to minutely search the record for evidence that the trial court's valuations may be incorrect or that the distribution may be improper. **Slaughter,** 2008 WL

1970491 at *2 (citations omitted).

While Mr. Harden did provide this Court with a table, it does not comply with Rule 7. The table provided lists the valuation and distribution of the assets as decided by the trial court. However, it does not provide any citations to the record for the trial court's decisions. Moreover, the table does not provide the values, the proper distribution asserted by the parties or citations to the record to support the parties' assertions. At oral argument, Mr. Harden submitted he could not fully comply with Rule 7 because the trial court did not making findings as to the value of all of the marital property. The fact that the trial court did not assign values to all of the property does not prohibit Mr. Harden from providing this Court with the value he contends ought to be assigned and a citation to the record to support such an assertion. Perhaps, Mr. Harden did not do so because, as stated by the trial court, there was simply no evidence presented as to the value of much of the property. We recognize that under Tenn Ct. App. R. 1(b) this Court may suspend the requirements of these rules for good cause shown. Nevertheless, we find that based upon his failure to comply with Tenn. Ct. App. R. 7, Mr. Harden has waived any issue relating to the valuation of property. Despite Mr. Harden's failure to comply with Rule 7, this Court will review the trial court's distribution to determine if it was equitable. Because of our finding that Mr. Harden waived any issue relating to the valuation of the property, we will proceed with our review using the property values determined by the trial court.

At oral argument Mr. Harden conceded that the only item of property which he was contending that the trial court inequitably divided was the marital home. From our review of the record, it appears that other than the marital home, Mr. Harden was awarded all of the personal property which he requested. However, as stated above, we must consider the *entire* distribution of assets in order to determine whether the division is equitable and cannot simply consider one asset in particular. *Watters v. Watters*, 959 S.W.2d 585, 591 (Tenn. Ct. App. 1997). Also, the trial court's division will not be held to be inequitable merely because it is not precisely equal. *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988).

From the division of the marital assets as provided in the final decree, Mr. Harden was awarded approximately $89,193 worth of assets, or 34.6% of the valued marital estate, along with a bedroom suit and wireless internet equipment which were not valued. Mrs. Harden was awarded approximately $168,700 of marital assets, or 65.4% of the marital estate, as well as the remaining marital property which was not awarded to Mr. Harden and the remaining cash in the parties' bank accounts, neither of which were valued by the trial court. Included in this division, the trial court divided the marital home valued at $241,000,

awarding Mrs. Harden seventy percent of the value and Mr. Harden thirty percent of the value.

Prior to this division, the trial court considered the factors provided in Tenn. Code Ann. §36-4-121(c). Specifically, the trial court found the parties had a short marriage; that Mr. Harden was in good physical and mental health and he was currently employed, although underemployed; that Mrs. Harden is in poor physical and mental health, and had no work history outside the home; that Mrs. Harden "has no ability for future acquisition of capital assets, and her only foreseeable income will be the continuation of Social Security benefits from her deceased former spouse, currently some $1,200.00 per month;" and that Mr. Harden,"enjoys a significantly higher ability for future acquisition of capital assets and income." The trial court further found that both parties equally contributed to significant dissipation of assets through gambling. Moreover, the trial court found that, at the time of marriage, Mrs. Harden "owned a home and an automobile free of encumbrances; had significant furniture and furnishings;" a bank account containing approximately $23,000 and no consumer debt; while Mr. Harden's pre-marital status was vastly different. It found that Mr. Harden, at the time of marriage owned a "'lake house' of significantly lesser value, which was encumbered to the extent of approximately $40,000; a vehicle upon which there was a lien; furniture and furnishings of lesser value than those of wife; tools and equipment, including those received from his Father;" and an equitable interest in two homes valued at $41,460. The trial court also found that at the time of marriage, Mr. Harden owed certain consumer credit accounts and back taxes to the IRS. After reviewing the record, we find that the evidence does not preponderate against these findings.

Based on these findings, we find that the trial court's division of marital assets, including the marital home, was equitable. Mrs. Harden came into the marriage with significantly more assets. Also, Mrs. Harden does not have the ability to work or the ability to acquire significant assets in the future. On the other hand, Mr. Harden came into the marriage with few assets, has the ability to work, and has a significantly higher possibility of acquiring future assets. Accordingly, we affirm the trial court's division of marital assets. Our finding that the trial court's division of marital assets was equitable pretermits our review of Mrs. Harden's assertion that we should modify the division of the marital home.

We note that Mr. Harden contends he was only awarded eight percent of the marital estate. To reach this amount, Mr. Harden asserts that he was only awarded $4,850 of the marital home. That is not what is reflected, however, in the trial court's order. The trial court awarded Mr. Harden thirty percent of the value of the marital home, which amounts to $72,300. The trial court allowed Mrs. Harden to remain in the marital home, but ordered her

to pay Mr. Harden his share. However, the trial court ordered that the premarital debt of $50,000 owed by Mr. Harden to Mrs. Harden be deducted from this amount. The trial court also ordered that Mrs. Harden's award of attorney fees be deducted from this amount. As often said, the division of marital property is not a mechanical process. It is common for courts to offset a debt owed to one spouse with property held by that spouse and due to the debtor-spouse. *See e.g.* **Bochette v. Bochette,** No. M2009-00113-COA-R3-CV, 2010 WL 366694 (Tenn. Ct. App. Feb. 2, 2010)(finding that each party was entitled to 50% of the equity in the house, but that husband owed wife alimony *in solido* equal to his share of the equity and therefore ordering that wife would receive the entire equity in the home); **Hill v. Hill**, No. M2007-00049-COA-R3-CV,2008 WL 5100925 (Tenn. Ct. App. Dec. 12, 2008)(awarding wife the entirety of the fund being held by the court, finding that a portion of the funds were alimony *in solido*). This is exactly what the trial court did in this case. It would be illogical for the trial court to order Mrs. Harden to pay Mr. Harden $72,300 for his share of the marital home and also order Mr. Harden to pay Mrs. Harden $67,150 for the premarital debt and attorney fees. Accordingly, we find that Mr. Harden was awarded $72,300 of the value of the marital home, but that this amount was reduced as the result of the debt and attorney fees award to Mrs. Harden.

Mr. Harden contends that the trial court erred in finding he owed Mrs. Harden $50,000 on a premarital IOU. After reviewing the record, we find that the evidence does not preponderate against the trial court's finding. Both Mrs. Harden and her daughter testified that Mrs. Harden loaned approximately $50,000 to Mr. Harden prior to the marriage so that he could make repairs to his home. Both Mr. Harden and Mrs. Harden testified that the money was a loan. Mrs. Harden testified that the money was never repaid. Mr. Harden testified that he believed the loan had been paid. However, there is no evidence in the record to support Mr. Harden's assertion and this court is left with a "he said – she said" situation. After reviewing the record, we find that the evidence does not preponderate against the trial court's finding. Therefore, the trial court's finding that Mr. Harden owed a premarital debt to Mrs. Harden in the amount of $50,000 is affirmed.

However, after reviewing the record, we do find a mathematical error in the trial court's calculations of the amount Mrs. Harden must pay to Mr. Harden for his portion of the marital home. The trial court awarded Mr. Harden thirty percent of the value of the marital home. The home is valued at $241,000, and therefore his share would equal $72,300. As discussed above, the trial court then required the $50,000 which Mr. Harden owed Mrs. Harden be deducted from this amount, along with Mrs. Harden's award of attorney fees in the amount of $17,150. The trial court however found that this resulted in $4,850 in which Mrs. Harden would be required to pay Mr. Harden. Upon review, we have determined that the amount remaining after the court ordered deductions actually amounts to $5,150.

-14-

Therefore, the judgment of the trial court should be modified as such.

## Attorney Fees

We next address Mr. Harden's contention that the trial court abused its discretion in awarding Mrs. Harden her attorney fees. An award of attorney's fees is treated as an award of alimony; therefore the trial court must consider the statutory factors used when considering a claim for alimony. *Sullivan v. Sullivan*, 107 S.W.3d 507, 512 (Tenn. Ct. App. 2002) (citing *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995). "The award of attorney's fees and legal expenses is largely in the discretion of the trial judge, and the trial court' determination will not be disturbed unless we find the evidence preponderates toward the contrary." *Barnhill v. Barnhill*, 826 S.W.2d 443, 456 (Tenn. Ct. App. 1991). An award of attorney's fees is appropriate when "the spouse seeking them lacks sufficient funds to pay his or her own legal expenses or would be required to deplete his or her resources in order to pay these expenses." *Smith v. Smith*, 984 S.W.2d 606, 610 (Tenn. Ct. App. 1997).

After reviewing Mr. Harden's brief, we find this issue waived. Rule 27 of the Tennessee Rules of Appellate Procedure provides in pertinent part:

> **(a) Brief of Appellant**. The Brief of the appellant shall contain under appropriate headings and in the order here indicated:
>
> *            *            *
>
> (7) An argument, which may be preceded by a summary argument, setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on;

"[A]n issue is waived where it is simply raised without any argument regarding its merits." *Bean v. Bean*, 40 S.W.33 52, 56 (Tenn. Ct. App. 2000). Finding no argument on the issue of attorney fees, we find this issue waived.

## Retrieval of Property

Finally, we address Mr. Harden's contention that the trial court erred in refusing to allow him to retrieve his personal property from the marital home. From our review of the record, it appears that the only time the trial court denied Mr. Harden's requests to retrieve his property was after the Final Decree was entered and a Notice of Appeal filed. In response to Mr. Harden's September 11, 2009 motion to compel and for contempt, the trial court declined to rule on the motion finding that it was not a sworn petition. Mr. Harden then proceeded to file a sworn petition for contempt and motion to compel on October 23, 2009. The trial court then entered an order staying the proceedings, finding that it could not hear the petition under Tenn. R. Civ. P. 62.03 as the matter had been appealed.

Rule 62 of the Tennessee Rules of Civil Procedure governs stays pending an appeal. Rule 62.01 provides for an automatic stay from execution on a judgment for thirty days after the entry of the judgment. Rule 62.01 provides certain exceptions for this automatic stay. These include: injunction and receivership actions; actions that remove a public officer; and actions that change or otherwise affect the custody of a minor child. Tenn. R. Civ. P. 62.01. Rule 62.03 allows a trial court to suspend relief or grant additional or modified relief during the pendency of an appeal in actions excepted from Rule 62.01 or in actions for alimony or child support. After thirty days, execution of a judgment is not stayed unless done so by the trial court and a proper bond is given. Tenn. R. Civ. P. 62.04. "Under the provisions of Rule 62, judgments may continue to be enforced pending an appeal unless a stay is ordered by the trial court." *Beaty v. Beaty,* No. 01A01-9704-CH-00173, 1997 WL 576345, at *4 (Tenn. Ct. App. Sept. 17, 1997).

After reviewing Mr. Harden's brief, we find that the issue of the stay is waived. As discussed, Tenn. R. App. P. 27(a)(7) requires the appellant to provide this Court with legal argument to support its contention that the trial court erred, and to include in this argument, "the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on." Tenn. R. App. P. 27(a)(7). While Mr. Harden's brief does cite to the record, it merely supplies this Court with facts regarding his attempts to retrieve his property and what he has been able to obtain. It contains no legal argument whatsoever to support the assertion that the trial court erred in staying the proceedings. In fact, the argument section does not even contain a conclusory assertion that the trial court erred. Mr. Harden only states that trial court erred in denying him the right to retrieve his property in his statement of the issues and in his conclusion. Because he failed to provide this Court with any legal argument as required by Rule 27, we find that the issue regarding the stay is waived. *Bean v. Bean*, 40 S.W.33 52, 56 (Tenn. Ct. App. 2000).

## Conclusion

For the foregoing reasons we affirm the trial court's decision as modified and remand for further proceedings. Using our discretion, we decline to award Mrs. Harden her attorney fees for this appeal. Costs of this appeal are assessed to the Appellant Harold Lee Harden and his surety.

_____

J. STEVEN STAFFORD, JUDGE