# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 26, 2015 Session

## KIM LEWIS NEAS v. PATRICIA ERSKINE HEFFERNAN NEAS

### Appeal from the Chancery Court for Greene County
### No. 20130046    Douglas T. Jenkins, Chancellor

---

### No. E2015-00292-COA-R3-CV-FILED-DECEMBER 15, 2015

---

This appeal arises from a divorce. After almost 29 years of marriage, Kim Lewis Neas ("Husband") filed for divorce against Patricia Erskine Heffernan Neas ("Wife") in the Chancery Court for Greene County ("the Trial Court"). After a trial, the Trial Court, among other things, divided the parties' marital assets and liabilities. Husband appeals to this Court. The central issues in this appeal include the Trial Court's valuation of business assets awarded to Husband and the Trial Court's determination of Husband's income. Because Wife leaves this marriage with more in assets than Husband and in an otherwise comparable financial position, we reverse the Trial Court's award of attorney's fees to Wife. We also modify the allocation of marital debt and remand for the Trial Court to effectuate this new allocation. Otherwise, we affirm the judgment of the Trial Court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed, in Part, and, Reversed, in Part; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which JOHN W. MCCLARTY, J., and D. KELLY THOMAS, JR., SP. J., joined.

Jerry W. Laughlin, Greeneville, Tennessee, for the appellant, Kim Lewis Neas.

Jessica C. McAfee, Greeneville, Tennessee, for the appellee, Patricia Erskine Heffernan Neas.

# OPINION

## Background

Husband and Wife married in 1985. At the time the divorce complaint was filed, the parties had one child still of minority age, a 15 year-old son ("the Child"). Both parties are in their mid-50s. The parties jointly owned a business during the marriage, Neas Welding & Steel Fabrication, which Husband operated. Wife worked as a bookkeeper, but also attended nursing school and earned an associates degree in nursing. Wife worked two jobs during the marriage. In March 2013, Husband filed suit for divorce against Wife in the Trial Court. Wife previously had filed for divorce against Husband in 2011, but had voluntarily dismissed that suit. Wife filed an answer and counterclaim to Husband's suit for divorce. A struggle over discovery ensued, with Wife alleging that Husband was less than cooperative. This case was tried in August 2014. We now review the testimony relevant to the issues before us.

Husband testified that Wife's attitude toward him changed when a downturn in the economy resulted in losses at the welding business. During the last few years of the parties' marriage, Husband slept on the couch. Husband introduced an exhibit demonstrating that Wife had removed $12,000 from a business account in October of 2012 and transferred it to her exclusive control. Husband also testified to the value of his business's assets. Husband stated that the total value of the business equipment was $55,175. Taking into account all else, including accounts receivable, Husband testified that the total net value of the assets of the business was $80,329. Husband testified that in January 2014 he learned of $25,000 spent by Wife on allegedly cosmetic changes to the parties' residence. Regarding personal property, Husband provided a list of guns he owned which he valued at $2,175. Husband also had a motorcycle. Husband testified he owned no other unspecified personal property that he had carried off as alleged by Wife. Husband stated that in June 2014, he borrowed $15,000 from a friend, Butch Shaw, to help pay off a loan. Husband stated that his total income for 2013 consisted of his compensation from the welding business of $29,080 as reflected on his W-2. Husband also testified to significant charitable donations that he had made.

Ashley Bradley ("Bradley"), a bookkeeper at the welding business for three years, testified. Wife previously had served as the bookkeeper. Bradley testified that some of Husband's personal expenses were paid by checks of the business, but that she

separated Husband's personal expenses from business expenses. Expenses of Husband found to be personal expenses were not treated as business expenses, but rather were charged to a shareholder receivable account.

Jay Guinn ("Guinn"), a welder and fabricator, testified as well. Guinn had inspected a significant piece of equipment, a large break press, at the welding business. Guinn stated that the machine had electronic problems that rendered it unreliable.

Blake Wilson ("Wilson"), an auctioneer of machinery, testified for Wife regarding the fair market value of the business assets of the company. Husband objected strongly to Wilson's testimony because Wilson had not personally inspected any of the equipment. Husband's counsel, however, stipulated to Wilson's expertise. Wilson had sat down with Will Wall, another auctioneer employed by the same company as Wilson and who had been hired by Husband and, therefore, was familiar with the equipment, and reviewed Wall's report and evaluation method. The Trial Court permitted Wilson to testify. Wilson arrived at a fair market value of $128,100. Wilson acknowledged that Wall determined that the total forced liquidation value of the equipment was $65,825.

Wife testified that her monthly income until shortly before trial was $5,509.25. As of trial, Wife worked part-time at her nursing job, earning $4,114 per month. Wife also had an accounting job. Wife asserted that Husband had personal property in his possession of $30,000 that he had removed, but acknowledged this was a "guesstimate." For his part, Husband sharply denied having any additional, unspecified personal property in his possession. Wife testified: "[H]e never would provide me with a list of the furniture and electronics and all the stuff he has in his business . . . [$30,000] was kind of our guesstimate because I didn't know what all he took."

In October 2014, the Trial Court entered the final decree of divorce, finding, in relevant part, as follows: Wife was entitled to a divorce based upon Husband's inappropriate marital conduct; Husband's monthly income was $5,500; Husband possessed certain unspecified personal property worth $15,000. Approximately 55% of the marital assets, around $700,000 in all, were awarded to Wife, to Husband's 45%. Among other marital assets, Husband received the welding business and Wife received the marital residence. Approximately 99% of marital debt in the vicinity of $50,000 was assigned to Husband, with Wife's share of the marital debt limited to one-half of the Child's $508 school tuition.

Husband filed a motion to amend findings of fact. Husband also filed a motion to alter or amend findings pertaining to Husband's gross monthly income. The Trial Court entered an order awarding discretionary costs to Wife. In February 2015, the Trial Court entered an order on all rule 59 motions, denying Husband's requested relief

and awarding partial attorney's fees to Wife. The Trial Court reserved the outstanding issue of Husband's alleged contempt but otherwise rendered the order final. The Trial Court, choosing a figure within the range established by the evidence presented at trial, clarified that it found the assets of the welding business to be worth $110,000. Husband timely filed an appeal to this Court.

## Discussion

Although not stated exactly as such, Husband raises the following issues on appeal: 1) whether the Trial Court erred in determining that Husband's monthly income is $5,500; 2) whether the Trial Court erred in finding that the net fair market value of the assets of Neas Welding & Steel Fabrication is $110,000; 3) whether the Trial Court erred in finding that Husband held certain unspecified personal property with the value of $15,000; 4) whether the Trial Court failed to divide the marital assets equitably in accordance with the relevant statutory factors; 5) whether the Trial Court erred in imposing upon Husband some 99% of the marital liabilities; 6) whether the Trial Court erred in requiring Husband to pay $4,500 in attorney's fees to Wife; and, 7) whether the Trial Court erred in finding that Wife, rather than Husband, had established grounds for divorce.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). As our Supreme Court has instructed:

> When credibility and weight to be given testimony are involved, considerable deference must be afforded to the trial court when the trial judge had the opportunity to observe the witnesses' demeanor and to hear in-court testimony. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997) (quoting *Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996)). Because trial courts are able to observe the witnesses, assess their demeanor, and evaluate other indicators of credibility, an assessment of credibility will not be overturned on appeal absent clear and convincing evidence to the contrary. *Wells v. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

*Hughes v. Metro. Gov't of Nashville and Davidson County*, 340 S.W.3d 352, 360 (Tenn. 2011).

In *Neamtu v. Neamtu*, No. M2008-00160-COA-R3-CV, 2009 WL 152540 (Tenn. Ct. App. Jan. 21, 2009), *no appl. perm. appeal filed*, this Court discussed our standard of review with respect to issues surrounding the valuation of marital assets. We stated:

> Once property has been classified as marital property, the court should place a reasonable value on property that is subject to division. *Edmisten v. Edmisten*, No. M2001-00081-COA-R3-CV, 2003 WL 21077990, at * 11 (Tenn. Ct. App. May 13, 2003). The parties have the burden to provide competent valuation evidence. *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). When valuation evidence is conflicting, the court may place a value on the property that is within the range of the values presented. *Watters v. Watters*, 959 S.W.2d 585, 589 (Tenn. Ct. App. 1997). Decisions regarding the value of marital property are questions of fact, *Kinard*, 986 S.W.2d at 231; thus, they are not second-guessed on appeal unless they are not supported by a preponderance of the evidence. *Smith*, 93 S.W.3d at 875.

*Neamtu*, 2009 WL 152540, at *4.

Tennessee law sets out a number of factors for trial courts to consider in making an equitable division of marital property, including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

-5-

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (2014).

A trial court has wide discretion in dividing the interest of the parties in marital property. *Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991). As noted by this Court in *King v. King*, when dividing marital property:

The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every item of marital property. *Brown v. Brown*, 913 S.W.2d [163] at 168. . . . In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results. *See Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. App. 1990).

*King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998) (quoting *Roseberry v. Roseberry*, No. 03A01-9706-CH-00237, 1998 WL 47944, at *4 (Tenn. Ct. App. Feb. 9, 1998), *no appl. perm. appeal filed)*.

We first address whether the Trial Court erred in determining that Husband's monthly income is $5,500 for purposes of child support. According to Husband, his income should be found to be no more than $2,700 per month, as reflected by his W-2, and those personal expenses that were duly accounted for. Husband points to remarks the Trial Court made, as follows:

> And then as to child support itself, I find that mother's income is $4,200.00 a month. Father's income, on his W-2 is $3,000.00 a month. However, the mother has, and based upon father's admission too really, mother's convinced The Court that there are certain expenses that he has monthly that are paid for him by this business that he has control of. And so I find that his actual monthly income, in accordance with the way it should be computed in the child support guidelines, is actually $5,500.00 a month. So plug those numbers into a worksheet and that will give you your child support amount.
>
> ***
>
> MR. CREECH: Your Honor, one other point of clarification as to the $5,500.00 on Mr. Neas's income. Does Your Honor make a ruling as the charitable contributions which are voluntary? At $1,000.00 a month, I think that should be factored in on top, in addition to...
> THE COURT: No, don't...
> MR. LAUGHLIN: Well, Your Honor, I think that's already taken that into consideration.
> THE COURT: Yeah, let's not pile on. You're doing all right. The Court's not making any specific finding. I'm just saying based on what I heard, I think his income is more like $5,500.00 a month and I make that finding. Now, and I'm not going to punish him for giving, I'm not going to take it up a notch higher than that just because he gives some charitable contributions. That's to his credit. That's good.
> MR. CREECH: Well, when it's more than child support, though, Your Honor, I think that's not to his credit.
> THE COURT: Well,...
> MR. CREECH: That's...
> THE COURT: ...Mr. Creech, don't snatch defeat from the jaws of victory here.
> MR. CREECH: I'll sit down.

Perhaps the most controversial sticking point in this case regards Husband's income. Wife has argued throughout the case that Husband conceals the true extent of his income by blurring the lines between his personal finances and those of the business. Husband, on the other hand, insists that his annual income is what is in black and white on his W-2—around $30,000. Wife argues that Husband's actual lifestyle is incongruent with his stated income. One major fact in the record supporting Wife's position is the evidence of Husband's substantial charitable donations. According to Husband, the Trial Court, as reflected in its remarks quoted above, did not factor this into its finding. Indeed, Husband asserts that the Trial Court never actually made a specific finding as to his income.

We disagree with Husband's interpretation of the Trial Court's remarks and findings. It appears to us that the Trial Court did consider the evidence presented as to Husband's apparent capacity to spend, including his charitable donations, in excess of his stated income. However, when pressed by Wife's counsel to go even further, the Trial Court declined. Having reviewed the record carefully, we find that the evidence does not preponderate against the Trial Court's finding Husband's monthly income to be $5,500. Evidence was available to the Trial Court that Husband's income was more than what was shown on his W-2. Husband argues that he and his bookkeeper were careful to keep Husband's personal and business expenses separate. The Trial Court, to some extent, implicitly did not credit this explanation. This was within the Trial Court's prerogative as the determiner of credibility, and we give strong deference to trial courts' credibility determinations. We affirm the Trial Court as to this issue.

We next address whether the Trial Court erred in finding that the net fair market value of the assets of Neas Welding & Steel Fabrication is $110,000. Husband argues that Wife's expert, Wilson, should not have been allowed to testify as he did not personally inspect the assets of the welding business. According to Husband, Wilson was unfamiliar with the actual values of the equipment, and whether they functioned properly or not. However, Husband cited to no law dictating that because the expert did not personally inspect the property at issue, he could not testify as to its value. It appears the Trial Court did consider Wilson's having relied on Wall's inspection and report on the equipment and not having personally inspected the equipment in taking into account the weight to be afforded Wilson's testimony. This being so, we find that the Trial Court adequately fulfilled its role as gatekeeper. We also observe that Wilson's status as an expert was undisputed. With Wilson's fair market value of $128,000 for the business assets, plus the accounts receivable to total approximately $154,000, and Husband's low end value of approximately $80,000 total, the Trial Court had a defined range in which to choose a value. The Trial Court did not err in finding the value to be $110,000 as it fell within the range of values established at trial, and the evidence does not preponderate against the finding.

We next address whether the Trial Court erred in finding that Husband held certain unspecified personal property with the value of $15,000. Wife testified to various items that Husband allegedly removed from the home. Wife then submitted an estimate of $30,000. Husband denied any such unspecified personal property in his possession, and submitted a value of $0. The Trial Court, again, heard the testimony, had a defined range within which to select a figure, and arrived at $15,000. We will not disturb the Trial Court's implicit findings of credibility given the record before us. Further, we find that the evidence does not preponderate against this finding by the Trial Court.

We next address whether the Trial Court failed to divide the marital assets equitably in accordance with the relevant statutory factors. The Trial Court certainly would have better facilitated appellate review by citing to the statutory factors it considered. However, the Trial Court's order and its reasoning are not so impossible to discern from the record such that we are unable to proceed on this issue. Among other assets, Husband received the welding business and Wife received the marital residence. Wife, with her nursing background and degree and bookkeeper experience, is well-equipped to be financially secure going forward. Husband continues to own and operate his business. When it comes to the division of a marital estate, we do not tweak or second guess trial courts. The evidence does not preponderate against the Trial Court's finding that the division of the marital estate, while not equal, was equitable between these parties.

We next address whether the Trial Court erred in imposing upon Husband some 99% of the marital liabilities. Husband specifically requests that Wife be held solely responsible for her $12,000 debt to the business and for $13,810 owed on a BP credit card. Husband notes correctly that, under an analysis of allocation of marital debt, we look to who incurred the debt, the debt's purpose and who benefitted from the debt. The parties have a comparable income. However, the Trial Court's allocation of marital debt is hugely favorable to Wife, and serves to change a 55/45 division of the marital estate to something more akin to 60/40 in Wife's favor. Wife has presented no satisfactory argument such that could justify this disparity, nor do we find any support for it in the record. We modify the allocation of marital debt to assign 55% of the marital debt to Husband and 45% to Wife. We remand this case to the Trial Court to effectuate this change.

We next address whether the Trial Court erred in requiring Husband to pay $4,500 in attorney's fees to Wife. Wife argues that the award of attorney's fees is justified because of Husband's alleged obstinacy in the discovery process. However, we do not believe this is the correct standard to employ on review given the Trial Court's decision on this issue. While the Trial Court did state in its final judgment that "it does

appear to the Court that Husband has been less than forthcoming in the discovery process . . .," this statement appears to have been addressed more directly to Wife's contempt motion which the Trial Court did not resolve. Further, the Trial Court's award of attorney fees to Wife is not stated by the Trial Court to be that of a sanction for Husband's actions in the discovery process. In fact, language was specifically deleted from the final judgment that provided that Wife was being awarded her attorney fees as a sanction against Husband. Moreover, Wife, as indicated above, will leave the marriage with greater assets than Husband.

For these reasons, the Trial Court did not employ the correct standard or criteria in arriving at an award of attorney's fees for Wife, and merely noting Husband was less than forthcoming in discovery will not suffice. In order to establish an award of attorney's fees in a divorce as alimony in solido rather than as a sanction, there must be consideration of the relevant alimony statutory factors including the parties' relevant needs and abilities to pay. Such an analysis is lacking in this case as to the award of attorney fees. We reverse the Trial Court's award of attorney's fees to Wife.

The final issue we address is whether the Trial Court erred in finding that Wife, rather than Husband, had established grounds for divorce. Specifically, Husband objects to the Trial Court's having found him to have engaged in inappropriate marital conduct. Husband points to Wife's testifying that she "didn't want a divorce in the first place." However, Wife, at other times, testified, among other things, to Husband not having time for her. Taken as a whole, we do not conclude that the evidence preponderates against the Trial Court's finding that Wife, rather than Husband, established grounds for divorce. We further note that our resolution of this issue does not impact or influence our decision as to any of the other issues as already discussed in this opinion.

In summary, except for the Trial Court's award of attorney's fees to Wife, which we reverse and, our modification of the allocation of marital debt so that on remand the Trial Court is to effectuate a new allocation of marital debt that leaves Husband with 55% of the marital debt and Wife with 45%, we affirm the judgment of the Trial Court.

## Conclusion

The judgment of the Trial Court is affirmed, in part, and, reversed, in part, and this cause is remanded to the Trial Court for further proceedings consistent with this opinion and for collection of the costs below. The costs on appeal are assessed equally one-half against the Appellant, Kim Lewis Neas, and his surety if any, and one-half against the Appellee, Patricia Erskine Heffernan Neas.

_____
D. MICHAEL SWINEY, JUDGE